[No. 14680-4-III.   Division Three.   April 14, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN O. DUNCAN, *Appellant*.

*DeForest N. Fuller* of *Fuller & Associates, P.S.*, for appellant.

*Gary A. Riesen, Prosecuting Attorney*, and *James A. Hershey, Deputy*, for respondent.

Schultheis, C.J. — A juvenile court judge may impose an exceptional sentence if a standard range sentence would constitute a manifest injustice. After his conviction for first degree murder, first degree burglary, attempted residential burglary and two counts of theft of a firearm, 12-year-old John Oliver Duncan received a manifest injustice sentence keeping him in juvenile detention until age 21. He contends the sentence is not supported by the record and is excessive. We remand for resentencing.

■ On August 19, 1994, Mr. Duncan and another 12-year-old, Manuel Sanchez, attempted to enter a neighbor's home at 1:00 A.M.[1] In the process, they broke a basement window, cut a telephone line and unscrewed motion sensor lights. They were discovered before they entered the house, but they escaped.

The next day, they entered a friend's home and took three pistols. They then went down to the Columbia River and began shooting at the water. After a man near the river yelled at the boys to stop, they began shooting at him. Eventually, the man hit Mr. Sanchez in the face with a thrown rock. The boys reacted by shooting the man until he fell into the water. They then ran up the embankment for more ammunition. Mr. Duncan reloaded, went back down to the man's body and shot him several more times, in the head and chest. In all, the man was shot at least 18 times. Police arrived as Mr. Duncan threw the guns under a bush and headed back up the embankment.

Mr. Duncan was charged by amended information with first degree murder, two counts of first degree burglary, residential burglary and four counts of theft of a firearm. The juvenile court retained jurisdiction after a declination hearing. Mr. Duncan's statement to police was admitted af-

---

[1] Mr. Duncan does not assign error to the trial court's findings and they are verities on appeal. *State v. Allert*, 117 Wn.2d 156, 168, 815 P.2d 752 (1991).

ter a CrR 3.5 hearing. Ultimately, he was convicted of first degree murder while armed with a deadly weapon,[2] first degree burglary while armed with a deadly weapon,[3] attempted residential burglary,[4] and two counts of theft of a firearm.[5]

At sentencing, the trial court considered materials presented during the decline hearing and trial as well as the predisposition report prepared by the juvenile rehabilitation board. Although the board suggested Mr. Duncan's crimes met most of the aggravating factors found in RCW 13.40.150(3)(i),[6] the trial court found that the factors, in themselves, did not support a manifest injustice sentence. The court did find, however, that these factors supported a finding that Mr. Duncan was at serious risk of reoffending and that a manifest injustice sentence was necessary to protect the public. It also held that a sentence keeping him in juvenile detention until age 21 would provide the best opportunity for rehabilitation.

The board's recommended sentence length—535 weeks—included the weeks remaining until Mr. Duncan's 21st birthday plus possible earned good time. Although the trial court asserted it could not consider good time in the dispo-

---

[2]RCW 9A.32.030(1)(a); RCW 13.40.193, .196.

[3]RCW 9A.52.020; RCW 13.40.193, .196.

[4]RCW 9A.52.025.

[5]RCW 9A.56.300.

[6]The board suggested that Mr. Duncan's offenses satisfied these RCW 13.40.150(3)(i) aggravating factors:

"(i) In the commission of the offense, or in flight therefrom, the respondent inflicted or attempted to inflict serious bodily injury to another;

"(ii) The offense was committed in an especially heinous, cruel, or depraved manner;

"(iii) The victim or victims were particularly vulnerable;

"(iv) The respondent has a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement;

". . . .

"(vi) The respondent was the leader of a criminal enterprise involving several persons; and

"(vii) There are other complaints which have resulted in diversion or a finding or plea of guilty but which are not included as criminal history."

sition, it adopted the board's recommendation of 535 weeks as "the time necessary to address John Duncan's disabilities and, more particularly, . . . to protect the community from John Duncan."

The sole issue on appeal is the court's imposition of the manifest injustice sentence. Mr. Duncan contends the record does not support the court's reasons for departing from the standard range and asserts the length of the sentence is clearly excessive because it takes into consideration earned good time. We stayed disposition of this matter pending the Supreme Court decision in *State v. Sledge*, 133 Wn.2d 828, 947 P.2d 1199 (1997).

A juvenile court may impose a sentence outside the standard range if it determines that a sentence within the standard range would "effectuate a manifest injustice." RCW 13.40.160(1); *State v. P.B.T.*, 67 Wn. App. 292, 300, 834 P.2d 1051 (1992), *review denied*, 120 Wn.2d 1021 (1993). The Juvenile Justice Act of 1977 defines as manifest injustice "a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter." RCW 13.40.020(16). These purposes include protection of the citizenry and provision of necessary treatment, supervision and custody for juvenile offenders. RCW 13.40.010(2)(a), (f).

The trial court's finding of manifest injustice must be supported by clear and convincing evidence, and the resulting sentence must not be clearly excessive. RCW 13.40.160(1), .230(2). In reviewing a trial court's finding of manifest injustice, the appellate court engages in a three-part test: (1) Are the reasons given by the trial court supported by substantial evidence; (2) do those reasons support the determination of a manifest injustice disposition beyond a reasonable doubt; and (3) is the disposition either clearly too excessive or too lenient? RCW 13.40.230(2); *State v. Rhodes*, 92 Wn.2d 755, 760, 600 P.2d 1264 (1979); *P.B.T.*, 67 Wn. App. at 301. The trial court's reasons for imposing a manifest injustice sentence must be clear in the

record and must convincingly support the conclusion. *State v. Bevins*, 85 Wn. App. 280, 283, 932 P.2d 190, *review denied*, 133 Wn.2d 1005 (1997); *State v. E.J.H.*, 65 Wn. App. 771, 830 P.2d 375 (1992). Whether a court's reasons justify a departure from the standard range is a question of law. *State v. Scott*, 72 Wn. App. 207, 213, 866 P.2d 1258 (1993), *aff'd sub nom. State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995).

Here, the trial court's findings that a sentence outside the standard range was necessary to protect the public and rehabilitate Mr. Duncan are recognized factors supporting a manifest injustice disposition. *Bevins*, 85 Wn. App. at 284; *State v. N.E.*, 70 Wn. App. 602, 606-07, 854 P.2d 672 (1993). Mr. Duncan contends the expert testimony, specifically the recommendation of Eileen McCarty, does not support this finding.

Ms. McCarty, a clinical psychologist testifying for the defense, diagnosed a possibility that Mr. Duncan suffered attention deficit disorder and hyperactivity. She based her recommendations on personal observation during interviews, materials from the police department, an intelligence test and unspecified "personality tests." She described Mr. Duncan as an immature, unsophisticated youth of average intellectual ability who had limited contact with juvenile rehabilitation programs. She stated his prior offenses did not include assault. Based on these observations, she recommended juvenile rehabilitation for a standard range sentence of minimally four years.

Although the trial court considered Ms. McCarty's reports, it placed more confidence in the psychiatric evaluations of Jack Reiter, M.D.[7] Dr. Reiter based his assessment of Mr. Duncan on Ms. McCarty's psychological evaluation as well as on additional psychological tests and interviews. Besides a diagnosis of attention deficit hyperactivity disorder, he also diagnosed the more serious problems of conduct

[7]The trial court has discretion to choose among recommendations from different credible expert witnesses. *State v. J.S.*, 70 Wn. App. 659, 665, 855 P.2d 280 (1993).

disorder and oppositional defiant disorder.[8] Dr. Reiter described Mr. Duncan as a nonempathetic and self-centered child with aggressive, sadistic and antisocial personality traits. In his opinion, such a child is easily provoked and inclined to brood and harbor grudges. Although Dr. Reiter noted that an attention deficit disorder is usually easily treated with stimulant medication, he believed treatment was hampered here by the conduct and oppositional defiant disorders. At any rate, he believed appropriate treatment could help inhibit Mr. Duncan's impulsive violence in the future.

Both Dr. Reiter's report and the predisposition report prepared by Kathleen Peryea Gut noted that, contrary to Ms. McCarty's conclusion, Mr. Duncan has a long history of assaultive and destructive behavior. He began to fight at school in second grade and was expelled twice for fighting. By fifth grade, he had "terrorized his peers to the degree that they kept him after school with an aide, so the [c]hildren could get home safely." His offense history reveals such reports as intimidation with a weapon, malicious mischief, assault and theft. Most of these reports did not lead to filed charges, but in some cases he was offered and refused diversion; in one case he successfully completed a diversion agreement, and in another he was punished for failing to meet diversion terms.

The trial court considered these materials, and the report that Mr. Duncan recently had yelled death threats to a child in an adjoining cell, and found that his assaultive behavior had escalated over the past two years. Although the court found that the statutory aggravating factors of RCW 13.40.150(3)(i) were mostly subsumed in the charge of first degree murder, it held that the seriousness of the multiple injuries, inflicted on an unarmed man by a juve-

---

[8]THE AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) (DSM-IV) describes conduct disorder as "[a] repetitive and persistent pattern of behavior in which the basic rights of others or major age-appropriate societal norms or rules are violated . . . ." DSM-IV at 90. Oppositional defiant disorder is described as "[a] pattern of negativistic, hostile, and defiant behavior . . . ." DSM-IV at 93.

nile whose recent criminal history shows a failure to respect dispositional orders, could be considered in determining the future risk to the community. The court concluded that the pattern of escalating violence and property destruction and the level of violence exhibited in the current offenses indicated Mr. Duncan was a serious risk to reoffend. This conclusion is amply supported by the record and supports beyond reasonable doubt the imposition of a manifest injustice sentence to protect public safety.

Once a trial court has legitimately decided to depart from the standard range, it has broad discretion to determine the length of a manifest injustice disposition. *State v. Tauala*, 54 Wn. App. 81, 86, 771 P.2d 1188, *review denied*, 113 Wn.2d 1007 (1989). The court must have a tenable basis for its determination. *State v. S.S.*, 67 Wn. App. 800, 819, 840 P.2d 891 (1992). Here, the trial court found that if Mr. Duncan was not detained until age 21, he would beyond reasonable doubt continue to terrorize the community. The length of this detention would ensure that the maximum effort would "be expended on his behalf so that he [may] have any chance of being a productive, responsible and crime-free adult, while at the same time protecting the community." Both Ms. McCarty and Dr. Reiter recommended treatment in a controlled environment, and Dr. Reiter suggested that even with appropriate treatment Mr. Duncan's prognosis was only "guarded to possibly good." Nothing in the record indicates that the court considered a specific treatment program of a specific duration in setting the length of his disposition.

The juvenile court may set a maximum term of confinement beyond the offender's 21st birthday. Juveniles must, however, be released at age 21 regardless of their sentence. RCW 13.40.300; *State v. Bourgeois*, 72 Wn. App. 650, 658, 866 P.2d 43 (1994). The problem here is that the juvenile rehabilitation board added a number of weeks to its recommended sentence solely based on its speculation of possible earned early release time. The assumption that a juvenile offender will earn a discretionary early release invites too

much speculation and is a manifest abuse of discretion. *State v. Sledge*, 133 Wn.2d 828, 844-45, 947 P.2d 1199 (1997). While the trial court asserted it could not consider early release time, the fact remains that it relied on a recommendation based on such consideration. Absent facts documenting a need to confine Mr. Duncan for a set duration to attend a specific treatment program, the assumption that he might be released before his 21st birthday is too speculative to support the length of his sentence. *Id.* at 845.

To summarize, we affirm the trial court's imposition of an exceptional sentence. Because the length of the sentence appears to be based in part on speculation of earned early release, we remand for reconsideration of the sentence duration.

Remanded for resentencing.

KURTZ, J., and THOMPSON, J. Pro Tem., concur.

Review denied at 136 Wn.2d 1015 (1998).