[Nos. 42823-3-I; 43974-0-I.  Division One.  August 30, 1999.]

THE STATE OF WASHINGTON, *Appellant*, v. K.E., *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. C.H., *Respondent*.

274

*Norm Maleng, Prosecuting Attorney*, and *Charles W. Lind, Deputy*, for appellant.

*Cheryl D. Aza* of *Washington Appellate Project*, for respondent K.E.

*David B. Koch* of *Nielsen, Broman & Associates, P.L.L.C.*, for respondent C.H.

KENNEDY, C.J. — Where the Legislature provides that the standard range disposition for a criminal offense is the same regardless of the juvenile offender's criminal history, the juvenile offender's criminal history—whether it be the lack of recent criminal history, or the complete lack of criminal history—in and of itself is not a valid basis for finding that a standard range disposition would result in a manifest injustice. But where the juvenile court finds that a standard range disposition would constitute excessive punishment because the standard range is not needed to rehabili-

tate the juvenile offender or protect the public from criminal behavior, and these findings are supported by the record, the juvenile court may enter a manifest injustice finding and impose a downward exceptional disposition. Accordingly, in these consolidated appeals, we remand K.E.'s downward exceptional disposition for reconsideration in light of this opinion, but affirm C.H.'s downward exceptional disposition.

## STATEMENT OF FACTS

### A. K.E.

On December 30, 1997, K.E. entered a Shakey's Pizza Parlor, pointed a handgun in the face of two individuals, ordered one of the individuals to empty the restaurant cash register, and fled with the money. He pleaded guilty to first degree robbery. At the disposition hearing for the first degree robbery charge and an unrelated third degree attempted theft charge, K.E. sought a downward manifest injustice disposition on the first degree robbery adjudication and presented a number of witnesses who testified that K.E. had turned his life around by changing schools, participating in school and church activities, changing his circle of friends, participating in drug and alcohol treatment, improving his grades, and maintaining employment.

In its oral ruling, the juvenile court granted K.E.'s request for a downward exceptional disposition and explained its reasons for doing so:

> I'm simply taking a chance. And the chance I'm going to take is based on what all these people have been telling me.
>
> There's one thing that disturbs me greatly, and I think you ought to know it, is I am wondering what kind of message I'm sending if I impose this sentence . . . in your case.
>
> I have not had a case of First Degree Robbery where I did not send the person to the institution, and few judges here have, if any.
>
> And so one of the major reasons you're staying out of an

institution is because of your parents and ministers, your friends, the lawyers, who have all convinced me to disregard the probation counselor, who's asking me to send you to an institution [for 52 weeks], and . . . the prosecutor who's asking me to send you to an institution for a long period of time [within the standard range].

Report of Proceedings at 62, 66-67. When asked to clarify its manifest injustice finding, the juvenile court stated that it was relying on the mitigating circumstances set forth in the probation counselor's report—that K.E. had no criminal history when he was arrested for the current offense, that the seriousness of the offense was out of character for K.E., that K.E. is a low to medium risk to reoffend—and in the respondent's dispositional brief—K.E.'s drug and alcohol use on the day of the incident and K.E.'s limited criminal history—in finding that a standard range disposition would result in a manifest injustice. The juvenile court then sentenced K.E. to 30 days in detention, placed him on 12 months of community supervision, ordered him to perform 72 hours of community service, and ordered him to pay a $100 Victim Assessment Penalty and $1,000 in restitution.

## B. C.H.

Using instructions downloaded from the internet, C.H. and some friends made a crude form of napalm by dissolving Styrofoam in gasoline. C.H. used the napalm to burn paper in the fireplace of an abandoned house.[1] C.H. pleaded guilty to possessing an incendiary device, between July 7, 1998, and August 13, 1998, in violation of RCW 9.40.120, and an unrelated charge of taking a motor vehicle in violation of RCW 9A.56.070. At the disposition hearing, C.H. sought a downward manifest injustice disposition on the possession of an incendiary device adjudication.

In its written findings of fact and conclusions of law, the

---

[1]C.H.'s co-respondent later returned to the house and set it on fire.

juvenile court found that sentencing C.H. within the standard range for possession of an incendiary device, 103 to 129 weeks, would result in a manifest injustice:

> I.   There were no aggravating factors in this case.

> II.   There was the mitigating factor that the respondent had at least one year between any prior offenses and the current offense. The fact that the respondent had no prior criminal history is a higher mitigating factor than there simply being one year between offenses. The fact of no criminal history goes above and beyond what the legislature listed as mitigating when they chose the amount of time that would mitigate between offenses to be one year.

> III.   The seriousness level of what actually occurred in this offense is not like other cases which call for a sentence within the standard range of 103 to 129 weeks.

> IV.   There is no purpose for sentencing [C.H.] to a standard range sentence. To do so would be a manifest injustice. It is not needed to rehabilitate [C.H.] or to protect the community. It would constitute excessive punishment by clear, cogent and convincing evidence.

Clerk's Papers at 34-35. The juvenile court then sentenced C.H. to 30 days in detention, placed him on 12 months of community supervision, and ordered him to pay a $100 Victim Assessment Penalty.

The State appealed both K.E.'s and C.H.'s dispositions, and a commissioner of this court ordered that the appeals be consolidated for purposes of oral argument and disposition.

## DISCUSSION

Under the Juvenile Justice Act of 1977, the juvenile court must impose a standard range disposition absent a finding that the imposition of a standard range disposition would effectuate a manifest injustice. RCW 13.40.0357, 13.40.160(2). " 'Manifest injustice' means a disposition that would either impose an excessive penalty on the juve-

nile or would impose a serious and clear danger to society in light of the purposes of the Juvenile Justice Act of 1977." *State v. M.L.*, 134 Wn.2d 657, 660, 952 P.2d 187 (1998). "These purposes include protection of the citizenry and provision of necessary treatment, supervision and custody for juvenile offenders." *State v. Duncan*, 90 Wn. App. 808, 812, 960 P.2d 941 (citing RCW 13.40.010(2)(a), (f)), *review denied*, 136 Wn.2d 1015 (1998).

> In order to uphold a disposition outside the standard range, an appellate court must find that the reasons supplied by the disposition judge are supported by the record which was before the judge, that those reasons clearly and convincingly support the conclusion that a disposition within the range would constitute a manifest injustice, and that the sentence imposed was neither clearly excessive nor clearly too lenient.

*M.L.*, 134 Wn.2d at 660 (citing RCW 13.40.230(2)). "The trial court's reasons for imposing a manifest injustice sentence must be clear in the record and must convincingly support the conclusion. Whether a court's reasons justify a departure from the standard range is a question of law." *Duncan*, 90 Wn. App. at 812-13 (citations omitted).

## A. K.E.

K.E. maintains that his criminal history, the low to medium risk that he would reoffend, and his mental condition when he committed the offense—all factors that were discussed in either the probation counselor's report or his dispositional brief—each independently support the juvenile court's manifest injustice finding and the imposition of a downward exceptional disposition.

### 1. No Prior Criminal History

Under the pre-July 1, 1998 version of RCW 13.40.0357, the standard range disposition for a first degree robbery committed by a 15-year-old is 103 to 129 weeks regardless of the juvenile offender's criminal history. Laws

OF 1997, ch. 338, § 11.[2] Nonetheless, K.E. contends that "no prior criminal history" is an appropriate basis upon which a juvenile court may enter a manifest injustice finding and impose downward exceptional disposition, relying at least in part on the following statutory mitigating factor: "There has been at least one year between the respondent's current offense and any prior criminal offense[.]" RCW 13.40.150(3)(h)(v).

In support of this same argument, C.H. contends that "[b]y authorizing a disposition below the standard range where there has been at least one year since any prior offense, the Legislature recognized that a substantial period without criminal conduct signals increased rehabilitative potential and, likely, the need for less punishment through a manifest injustice disposition." Resp't C.H.'s Br. at 9-10. If the rule were otherwise, C.H. maintains that a juvenile offender with a criminal history more than a year old could receive a downward exceptional disposition but a juvenile offender with no criminal history could not.

The State takes a much different approach and contends that the "one year between the respondent's current offense and any prior criminal offense" mitigating factor does not apply where the standard range is the same regardless of the juvenile offender's criminal history:

> Common sense dictates that this factor is to be used where a prior offense would otherwise elevate the offender's sentencing range. Where such elevation has occurred, the court can consider the time span between the offenses to depart downward from the elevated range. RCW 13.40.150(3)(h); *see State v. Gutierrez*, 37 Wn. App. 910, 915, 684 P.2d 87 (1984). However, where no prior offense has been calculated in the respondent's offender score, his standard range reflects *no offender history*. Justifying a departure downward from a standard range already based on no offense history is illogical.

Appellant's Br. (C.H.) at 6 n.4. In other words, the State

---

[2]Because K.E. committed the first degree burglary before July 1, 1998, the pre-July 1, 1998 version of RCW 13.40.0357 applies in his case. *See* LAWS OF 1998, ch. 290 § 9; LAWS OF 1997, ch. 290 § 11.

contends that the juvenile offender's criminal history can never be a mitigating factor where, as here, the standard range disposition is the same regardless of the juvenile offender's criminal history.

Although one of the stated purposes of the Juvenile Justice Act is to provide punishment commensurate with the juvenile offender's criminal history, RCW 13.40.010, the State's approach makes the most sense where the Legislature has expressly provided that the standard range disposition for a particular offense is the same regardless of the juvenile offender's criminal history. Indeed, it would make little if any sense for the Legislature to provide that the standard range is the same regardless of the juvenile offender's criminal history and then permit the juvenile court to depart from the standard range based on the juvenile offender's criminal history. Therefore, we hold that where, as here, the standard range disposition is the same regardless of the juvenile offender's criminal history, notwithstanding RCW 13.40.150(3)(h)(v), the juvenile's criminal history, in and of itself, is not a valid basis for finding that a standard range would result in a manifest injustice and imposing a downward exceptional disposition. *Cf. State v. Ha'mim*, 132 Wn.2d 834, 845, 940 P.2d 633 (1997) ("We conclude that it would violate the intent of the SRA to allow an exceptional sentence, based essentially on the fact that the Defendant is a first-time offender, when the SRA specifically disallows a first-time offender sentencing option in a case where the first crime is a violent one.").

## 2. Low to Medium Risk to Reoffend

■ K.E. also contends that his low to medium risk to reoffend, a mitigating circumstance in the probation counselor's report, is a valid basis for finding that a standard range disposition would result in a manifest injustice. In support of this argument, K.E. cites several cases in which a high risk to reoffend has been held to be a valid basis for finding that a standard range disposition would result in a manifest injustice and imposing an upward

exceptional disposition. *See, e.g., State v. S.H.*, 75 Wn. App. 1, 11, 877 P.2d 205 (1994); *State v. J.N.*, 64 Wn. App. 112, 114, 823 P.2d 1128 (1992). The State maintains that a low risk to reoffend is not a valid basis for imposing a downward exceptional disposition:

> A "high risk to reoffend" serves as a proper aggravating factor when a detention period above the standard range is deemed necessary to (a) protect the public safety from a particular offender, and/or (b) adequately serve the goal of rehabilitating the offender. *S.H.*, 75 Wn. App. at 11-13; *State v. N.E.*, 70 Wn. App. 602, 606-607, 854 P.2d 672 (1993); *J.N.*, 64 Wn. App. at 116-18; *State v. Gutierrez*, 37 Wn. App. 910, 912, 684 P.2d 87 (1984); *State v. P.*, 37 Wn. App. 773, 775-78, 686 P.2d 488 (1984).
>
> Absent distinct concerns such as these, however, a dispositional system necessarily rests on a legal presumption that the standard range—established under the authority of the legislature—is generally adequate to achieve the goals and purposes for which the structure was designed. *See* RCW 13.40.010. In other words, we presume that *every* offender will be adequately punished and rehabilitated under the standard range such that he will not reoffend. Only when it is demonstrated that more is needed do we consider departing from the standard range.

Appellant's Reply Br. (K.E.) at 8-9.

We agree that the standard range set by the Legislature establishes the appropriate period for rehabilitating juvenile offenders in most cases. But we cannot agree with the State's incongruous contention that where a court finds that the standard range is not an appropriate period for rehabilitating a particular juvenile offender, the court may depart upward but not downward. Indeed, logic dictates that if a juvenile court may detain a juvenile offender for a period longer than the standard range to further the purposes of the Juvenile Justice Act, then a juvenile court should be able to detain a juvenile offender for a period shorter than the standard range to further the purposes of the Juvenile Justice Act. Therefore, we hold that a juvenile

court may enter a manifest injustice finding and impose a downward exceptional disposition where the juvenile court finds by clear and convincing evidence that a standard range disposition would be detrimental to the goal of rehabilitating the juvenile offender, and such a disposition would not endanger the public or be otherwise inconsistent with the goals of the Juvenile Justice Act. Indeed, to impose an excessive penalty on a juvenile in light of the purposes of the Juvenile Justice Act would be to defeat the very definition of "manifest injustice," and would presumably be to the detriment of that juvenile.

In this case, K.E.'s probation counselor cited several factors in support of her determination that K.E. was a low to medium risk to reoffend: lack of an observable offense pattern, sustaining family control, sustaining social control, and K.E.'s own self-reliance and control. All of these factors are relevant in determining whether a standard range disposition is needed to rehabilitate a juvenile offender and protect the public from criminal behavior. *See, e.g., State v. S.S.*, 67 Wn. App. 800, 817, 840 P.2d 891 (1992) ("Whether or not a child's parent can exert normal control over a child's behavior is clearly related to the degree of risk to society where the child's behavior itself constitutes such a risk."). And in this case, there is substantial evidence—including K.E.'s parents' involvement in his life, K.E.'s improvement in school, K.E.'s participation in drug and alcohol treatment, and K.E.'s steady employment—to support each of these factors. *See J.N.*, 64 Wn. App. at 114 ("[T]he disposition court's findings will be reversed only if 'no substantial evidence supports its conclusion.'") (quoting *State v. Grewe*, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991)). Therefore, because the juvenile court's low to medium risk to reoffend finding in this case is tantamount to a finding that a standard range disposition is not needed to rehabilitate K.E. or protect the public from his criminal behavior, this finding was a valid ground upon which to base a manifest injustice finding.

### 3. Voluntary Use of Drugs or Alcohol

Whether the juvenile offender "was suffering from a

mental or physical condition that significantly reduced his or her culpability for the offense though failing to establish a defense" is a statutory mitigating factor. RCW 13.40-.150(3)(h)(iii). According to the probation counselor's report, K.E. smoked marijuana and drank two 40 ounce beers before robbing the restaurant. At the disposition hearing, K.E.'s mother testified that K.E. would have never robbed the restaurant that night if he had been sober. K.E. maintains that this evidence is sufficient to sustain the juvenile court's finding that K.E. was suffering from a mental condition that significantly reduced his culpability.

Under the Sentencing Reform Act of 1981, the Legislature expressly provided that the "voluntary use of drugs or alcohol" is not a valid mitigating factor. RCW 9.94A-.390(1)(e); *see also State v. Gaines*, 122 Wn.2d 502, 509, 859 P.2d 36 (1993); RCW 9A.16.090. Although there is no like provision in the Juvenile Justice Act, one is not needed because, unlike adults over 21, it is generally illegal for juveniles to consume alcohol. *See* RCW 66.44.270. Indeed, it would beg reason to hold that the illegal consumption of drugs or alcohol can be a mitigating factor in the disposition of another crime committed under the influence of the illegally consumed drugs or alcohol. Therefore, we hold that the voluntary use of drugs or alcohol is not a valid mitigating factor under the Juvenile Justice Act.

### 4. Disposition on Appeal

■ "This court can affirm a manifest injustice finding if one or more of the factors supported by the record clearly and convincingly support the disposition and we can determine that the trial court would have entered the same sentence on the basis of the remaining valid aggravating factors." *S.H.*, 75 Wn. App. at 12. The record in this case reflects great hesitancy on the part of the juvenile court in entering the downward exceptional disposition, even when the court thought that there were three valid grounds upon which to enter a manifest injustice finding and to impose a downward exceptional sentence. Consequently, we cannot determine with certainty from the record that the juvenile court would grant the same disposition based solely on

K.E.'s low to medium risk to reoffend within the parameters of this opinion. That is, we think that it is possible that on remand the juvenile court may decide to impose a standard range disposition, follow the probation counselor's recommendation and impose a 52-week downward exceptional disposition, or enter a downward exceptional sentence of some period longer than 30 days. Therefore, we must remand K.E.'s downward exceptional disposition to the juvenile court for reconsideration in light of this opinion.

## B. C.H.

As an initial matter, the State claims in its brief that the juvenile court imposed a downward exceptional disposition for only one reason: "that [C.H.] had no prior 'criminal history.' " Appellant's Br. (C.H.) at 3. A review of the record and the juvenile court's written findings of fact and conclusions of law, however, indicates that its reason for imposing a downward exceptional disposition was two-fold: first, that C.H. had no prior criminal history; and second, in light of C.H.'s relatively innocuous criminal behavior, a 103 to 129 week standard range disposition was not needed to rehabilitate C.H. or protect the public, and would constitute excessive punishment by clear, cogent, and convincing evidence.

### 1. No Prior Criminal History

Under the current version of RCW 13.40.0357, the standard range disposition for possession of an incendiary device, a category "A" offense, is 103 to 129 weeks regardless of the juvenile's criminal history. LAWS OF 1998, ch. 290, § 5.[3] As discussed above, where, as here, the standard range disposition is the same regardless of the juvenile offender's

---

[3]Because C.H. committed the offense after July 1, 1998, he was sentenced under the current version of RCW 13.40.0357. *See* LAWS OF 1998, ch. 290 § 9.

criminal history, the juvenile offender's criminal history in and of itself is not a valid basis for entering a manifest injustice finding and imposing a downward exceptional disposition. Therefore, the fact that C.H. had no prior criminal history, in and of itself, was not a valid basis to find that a standard range disposition would result in a manifest injustice.

## 2. Punishment Commensurate with Rehabilitative Goals

As discussed above, a juvenile court may impose a downward exceptional disposition where the court finds that a standard range disposition would constitute excessive punishment because the standard range is not needed to rehabilitate the juvenile offender or protect the public from criminal behavior. In this case, the juvenile court expressly found, in light of C.H.'s relatively innocuous criminal behavior, that a standard range 103 to 129 week disposition was "not needed to rehabilitate [C.H.] or to protect the community" and "would constitute excessive punishment, by clear, cogent and convincing evidence." Clerk's Papers at 35.[4] The State does not challenge this factual determination on appeal. Therefore, this finding was a valid ground upon which to base a manifest injustice finding.

## 3. Disposition on Appeal

Although C.H.'s criminal history, in and of itself, was not a valid basis for imposing an exceptional disposition, the juvenile court could, as it undoubtedly did, consider C.H.'s criminal history in deciding whether a standard range disposition was needed to rehabilitate C.H. and protect the public from criminal behavior. This being the case, we have

---

[4] A finding of fact mislabeled as a conclusion of law is reviewed as a finding of fact. *State v. Evans*, 80 Wn. App. 806, 820 n.35, 911 P.2d 1344, *review denied*, 129 Wn.2d 1032 (1996).

no doubt that the juvenile court would enter a manifest injustice finding and impose the same downward exceptional disposition on remand. Accordingly, we affirm C.H.'s downward exceptional disposition.

## CONCLUSION

In these consolidated appeals, we remand K.E.'s downward exceptional disposition for reconsideration in light of this opinion, but affirm C.H.'s downward exceptional disposition.

GROSSE and AGID, JJ., concur.

Motions for reconsideration granted and opinion modified November 22, 1999.