[No. 20786-2-III. Division Three. April 17, 2003.]

THE STATE OF WASHINGTON, *Appellant*, v. TRISTAN ALLEN CRABTREE, *Respondent*.

538

*Karl F. Sloan, Prosecuting Attorney*, and *Stephen M. Bozarth, Deputy*, for appellant.

*Scot D. Stuart* and *Matthew T. Larsen* (of *Law Offices of Scot D. Stuart*), for respondent.

SWEENEY, J. — A juvenile court judge has discretion to impose a sentence below the standard range upon a finding of

manifest injustice. *State v. Sledge*, 133 Wn.2d 828, 844, 947 P.2d 1199 (1997). The finding must be supported by reasons. RCW 13.40.230(2)(a); *State v. Duncan*, 90 Wn. App. 808, 812, 960 P.2d 941 (1998). But those reasons are not limited to the factors specified in the Juvenile Justice Act of 1977, chapter 13.40 RCW. *See, e.g., State v. K.E.*, 97 Wn. App. 273, 283, 982 P.2d 1212 (1999).

Here, a juvenile court judge found a manifest injustice and imposed a sentence below the standard range based upon: (1) the extreme youth of the juvenile at the time of his earlier criminal history, (2) the absence of effective treatment in the institution, (3) his good progress in the community, (4) the negative effect on the community of institutionalizing him, and (5) the underlying purposes of the juvenile justice act. These constitute tenable grounds and tenable reasons for the judge's doing what he did. We therefore find no abuse of discretion and affirm the sentence.

## FACTS

Twelve-year-old Tristan Crabtree faced sentencing for several charges, including third degree theft and attempted burglary. The most serious charges were residential burglary and possession of a stolen firearm for entering the residence of his mother's boyfriend and taking a gun. His offender score of four raised the standard range sentence from local sanctions to 119-166 weeks of confinement. This offender score was based on offenses committed when Tristan was 10 and 11 years old.

The court found this to be an unusual situation. It ruled that the standard range was excessive and opted for a community-based disposition, which would not have been possible with a sentence in this standard range.

The court entered findings that Tristan's mother was in a treatment program and was "making great progress in her own therapy." Clerk's Papers (CP) at 177. The court found this to be "an absolutely essential change." Report of

Proceedings (RP) (Jan. 2, 2002) at 10. The court was impressed by the fact that Tristan had not been in any kind of trouble during the seven months since the current offenses occurred. His mother testified that he was receiving effective medication for the first time in his life. And she believed he was sincerely trying to improve his behavior. His mother also reported success in her own efforts to improve her parenting skills and her ability to work with him. Tristan's therapist worked closely with his school. She was also involved in his rigorous behavior modification plan.

The judge was greatly troubled by the drastic effect of the offender score because of Tristan's age when it was compiled. After reviewing "a huge number of documents," reading every page and taking extensive notes, the court found that Tristan had "significant emotional and mental health issues which require treatment." RP (Dec. 12, 2001) at 5; CP at 177. The judge concluded that treatment programs available in the institutions were inadequate. Meanwhile, community-based treatment was finally working. And Tristan was making unprecedented progress.

The judge considered the multiple purposes of the juvenile justice act and public safety. He then concluded that a lengthy incarceration would do Tristan more harm than good and would adversely affect public safety in the long run. The court decided that it was now or never for this juvenile and that community-based treatment was the preferred disposition. The court concluded that a standard range sentence would effect a manifest injustice.

At the first disposition hearing on December 12, 2001, the judge called upon counsel and everyone present in the courtroom to join him in devising an appropriate disposition. He decided that "a little time in detention" was necessary. RP (Dec. 12, 2001) at 36. The court continued the disposition proceedings to give everyone time to think it over. Meanwhile, Tristan remained in detention for 26 days.

On January 2, 2002, the disposition proceedings resumed. The court then imposed 30 days' confinement—30

days concurrent on each of two of the five counts and 5 days concurrent on two more. This was in addition to the four weeks Tristan had already spent in detention. On the fifth count, the court imposed the standard range of 15-36 weeks, suspended the sentence, and imposed a chemical dependency disposition alternative (CDDA).[1] The court added on three years' probation.

The State appeals, contending that the court abused its discretion in finding a manifest injustice and that the court lacked the discretion to impose CDDA as a matter of law.

## DISCUSSION

■ The juvenile court must impose a standard range disposition unless it finds that to do so would result in a manifest injustice. RCW 13.40.0357; RCW 13.40.160(2). As applied here, manifest injustice means an excessive penalty imposed on the juvenile in light of the purposes of the juvenile justice act. *K.E.*, 97 Wn. App. at 278-79.

STANDARD OF REVIEW

■ ■ We review the superior court's interpretation of the juvenile justice act de novo. *State v. Beaver*, 148 Wn.2d 338, 344, 60 P.3d 586 (2002). We then review the court's determination of manifest injustice for abuse of discretion. *Sledge*, 133 Wn.2d at 844.

SCOPE OF REVIEW

■ Our review is limited to the record that was before the disposition court. RCW 13.40.230(1). But we may also consider the court's oral ruling. *State v. E.J.H.*, 65 Wn. App. 771, 775, 830 P.2d 375 (1992).

STATUTORY INTERPRETATION

■ Particularly when interpreting the juvenile justice act, we must avoid narrow, semantic interpretations that defeat the purposes of the legislature. *Beaver*, 148 Wn.2d at 344. To uphold the juvenile court's finding that a standard

---

[1] Community-based treatment as an alternative disposition to local sanctions or confinement of 15-36 weeks. RCW 13.40.165.

range disposition would effect a manifest injustice, we must conclude (1) that the reasons supplied by the disposition judge are supported by the record and (2) that those reasons clearly and convincingly support the conclusion. RCW 13.40.230(2)(a).

THE COURT'S FINDINGS

We conclude that the record amply supports the judge's findings here. The court gave five major reasons for its finding that a two-and-one-half- to three-year confinement would work a manifest injustice in this case: the onerous effect of the offender score in light of the juvenile's youth and special needs; the unavailability of treatment in the institution; the particular effectiveness of current community treatment; the negative effect on community safety of long-term incarceration in this case; and the fundamental goals of the juvenile justice act. We review each of the court's reasons in order.

*Offender Score.* Based on the severity of the offense, the standard range would be local sanctions but for the prior convictions. Local sanctions can include up to 30 days of detention, up to 12 months of community supervision, up to 150 hours of community service, or up to $500 in fines. RCW 13.40.020(16). Tristan's standard range sentence was incarceration for 119 to 166 weeks.

The court noted that Tristan committed three of the prior offenses when he was only 10 years old, one when he was 11. His situation had changed since then: "and that ought to be taken into account somehow, and that he really shouldn't be—it's not just or fair to hold him accountable to the same degree in applying his criminal history. When we are talking about a kid age 15 to 17, that's different. And not only that, he is a special needs student and he has got these other issues . . . ." RP (Dec. 12, 2001) at 27-28.

*Inadequacy of Institutional Treatment.* The next issue the court considered was the availability of effective treatment:

> [I]f there were really an appropriate treatment program to send him to in the system, you know, I think I would do

it. . . . [B]ut I just think that there are really, real significant problems . . . in providing the kind of treatment in many areas for juveniles, and this is one.

. . . I really am concerned that not only would that not be available to him if I send him to a regular institution. I am really quite afraid that it will make the problem worse. And in this case, making the problem worse really affects, I think, public safety issues in the long run.

RP (Dec. 12, 2001) at 28-29.

*Success of Community Treatment.* The court was impressed by the fact that Tristan had, for the first time, developed a trusting and cooperative relationship with his counselor. He was attending school full time for the first time since the third grade and had stayed out of trouble for seven months. He had the support of the small community he lived in. The court was persuaded that to interrupt this progress just when his community-based treatment was finally "clicking" and to institutionalize the juvenile for two to three years would not only be an excessive penalty but would defeat the purposes of the juvenile justice act.

*Benefit to the Community.* Addressing the needs of the community, the judge thought: "I don't think [a long incarceration is] going to serve the goal of community safety. I am concerned about it . . . . But there are times when I think you can go through the motions and almost be self-defeating. I am concerned that this may be one of those times." RP (Dec. 12, 2001) at 30. "My best hunch and feeling is that it's possible for him to make some progress in the community. It's not certain, but that his chances are better. And if his chances are better, then the chances are better for the people he lives around . . . ." RP (Dec. 12, 2001) at 29.

*Purposes of the Juvenile Justice Act.* The standard range establishes the appropriate period for rehabilitating juvenile offenders in most cases. *State v. K.E.*, 97 Wn. App. 273, 282, 982 P.2d 1212 (1999). The purposes of the juvenile justice act include protection of the community and necessary treatment, supervision, and custody for juvenile offenders. RCW 13.40.010(2)(a), (f); *State v. Duncan*, 90 Wn.

App. 808, 812, 960 P.2d 941 (1998). The court may detain a juvenile for a period longer than the standard range to further the purposes of the juvenile justice act. Now for us that means that a juvenile court should be able to detain a juvenile offender for a period *shorter* than the standard range to further those same purposes. *K.E.*, 97 Wn. App. at 282-83.

JUDICIAL DISCRETION

In *K.E.*, Division One of this court held that a downward departure is appropriate if the court finds that the standard range is unnecessary to accomplish the rehabilitation of the juvenile offender and protect the public. "Indeed, to impose an excessive penalty on a juvenile in light of the purposes of the Juvenile Justice Act would be to defeat the very definition of 'manifest injustice,' and would presumably be to the detriment of that juvenile." *K.E.*, 97 Wn. App. at 283.

The State argues that a judge's mere dissatisfaction with a standard range is not enough to justify a disposition downward. And certainly for an adult this is true. *State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987). Whether this is or is not true for a juvenile is another question.

But, that aside, the judge here was not "dissatisfied" with the standard range in principle. Nor did he invalidate this particular juvenile's previous convictions, ignore his criminal history, or regard the criminal history as a "mitigating factor." The court found a manifest injustice precisely because the prior convictions were valid, the criminal history was properly calculated, and the deferred disposition and expungement provisions were accordingly not available. And the manifest injustice option provided him the discretion to depart from the guidelines.

Other factors such as parental involvement and effectiveness, the juvenile's improvement in school, and his participation in treatment may not be "listed" mitigating factors. They are nevertheless relevant in determining whether a standard range disposition is needed to rehabilitate the

juvenile offender and protect the public. *K.E.*, 97 Wn. App. at 283 (citing *State v. S.S.*, 67 Wn. App. 800, 817, 840 P.2d 891 (1992)). And while the judge did not rely on these factors here, he did include them in his analysis.

In sum, then, Tristan's extreme youth at the time of his earlier offenses, the inadequacy of institutional treatment, his success in the ongoing community-based treatment, and the overall benefit to the community are all tenable grounds and tenable reasons for this sentencing judge to do what he did.

CDDA

The State also objects to the imposition of the chemical dependency disposition alternative (RCW 13.40.165) because that provision requires that the juvenile be eligible for local sanctions under a standard range sentence. RCW 13.40.165 sets forth the procedures to be followed by the court when imposing the CDDA in the usual case. The court here followed essentially none of these provisions. Rather, the court entered a disposition under RCW 13.40.160 (dispositions *outside* the standard range).

Once a manifest injustice is declared and the court elects to depart from the standard range, the sentencing scheme of the juvenile justice act no longer applies. The court is vested with "broad discretion" to craft a disposition that will meet the needs both of the juvenile and of the community. *Duncan*, 90 Wn. App. at 815; *State v. Tauala*, 54 Wn. App. 81, 86, 771 P.2d 1188 (1989). The disposition crafted by the juvenile court will be reversed on appeal only if it is "clearly too lenient." RCW 13.40.230(2)(b); *State v. B.E.W.*, 65 Wn. App. 370, 375, 828 P.2d 87 (1992). And, again, the court's exercise of discretion will be overturned only upon a showing of manifest abuse of discretion. *State v. P.*, 37 Wn. App. 773, 779, 686 P.2d 488 (1984); *State v. Strong*, 23 Wn. App. 789, 794, 599 P.2d 20 (1979).

The court was aware that Tristan had previously been reported as having chemical dependency issues. The chemical dependency alternative is a flexible program. The

court's idea here was to "make [the] CDDA so that it's based on his mental health counseling and progress." RP (Dec. 12, 2001) at 39. By imposing a suspended 15- to 36-week sentence, the court retained the power to meaningfully supervise the community treatment. Again, those are tenable reasons for this decision.

NOT CLEARLY TOO LENIENT

The State urges reversal based on the degree of the court's departure from the standard range in this case.

 The State relies on *State v. Bridges* for the proposition that an "excessive" departure will usually be reversed. *State v. Bridges*, 104 Wn. App. 98, 15 P.3d 1047, *review denied*, 144 Wn.2d 1005 (2001). *Bridges* is distinguishable, however. The defendant in *Bridges* was sentenced in adult court, under the Sentencing Reform Act of 1981, chapter 9.94A RCW. *Bridges* holds that an exceptional sentence of an adult is justified only when the circumstances of the crime distinguish it from other crimes of the same category. The defendant's need for rehabilitation is not a valid reason as a matter of law. *Id.* at 102.

But the juvenile justice act requires that the court take into consideration a host of factors which may not be relevant to the sentencing of adults. The only *statutory* limitations are that any disposition outside the standard range must be determinate. It can include either confinement or community supervision or any combination of both. RCW 13.40.160(2).

The court properly interpreted the juvenile justice act and did not abuse its considerable discretion in finding a manifest injustice and crafting an appropriate disposition.

## CONCLUSION

Once a manifest injustice is on the table, the court's discretion is broad enough to encompass whatever dispositional elements the court deems most suitable to the circumstances. Our review is limited to deciding whether the disposition is clearly too lenient. RCW 13.40.230(2)(b).

Nothing in the statute or the case law suggests that any disposition option is categorically off limits.

The sentence is affirmed.

BROWN, C.J., and KURTZ, J., concur.