# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 76258-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BREAUNA O. JONES, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 22, 2018 |
| | ) | |

APPELWICK, J. — Jones challenges the manifest injustice disposition imposed by the juvenile court following her guilty plea to two counts of theft in the third degree. The record supports the manifest injustice disposition and length of the disposition. We affirm.

## FACTS

On November 15, 2016, at age 17, Breauna Jones pleaded guilty to two counts of theft in the third degree. The underlying charges were based on two shoplifting incidents that took place at Safeway stores in 2016. After accepting her plea, the court set over the disposition for one day in order to consider a recommendation from Jones's juvenile probation counselor (JPC). Jones was previously declared dependent under RCW 13.34.030(6) and when the court released her pending disposition, it imposed conditions of release, including the requirements that she abide by curfew and reside in the placement approved

However, by the next day, Jones had absconded from the Department's approved placement. The court issued a warrant and law enforcement detained Jones a couple of weeks later.

The State had initially agreed to recommend a standard range disposition of local sanctions, consisting of 6 months of community supervision. However, at the disposition hearing on December 13, 2016, the State argued that it was not bound to recommend that disposition, because Jones violated conditions of her release. The State sought a manifest injustice disposition of 27 to 36 weeks of secure detention at a Juvenile Rehabilitation Administration (JRA) facility. The State's recommendation was based on Jones's "inability to comply with community supervision terms, [and] her rather extreme needs that have been untreated so far and cannot be treated in the community."

The JPC recommended a 52 week term of detention at a JRA facility. The JPC submitted a report to the court supporting its recommendation. The JPC's report detailed Jones's personal and criminal history and her need for treatment and intervention. The attachments to this report included numerous court records, Department records, results of a 2015 global appraisal of individual needs (GAIN) assessment, a 2015 mental health assessment, and records related to her education and her 2015 admission to a drug treatment program.

Jones's counsel advocated for local sanctions of 12 months of supervision, and 60 days of detention with a pass for inpatient substance abuse

treatment. The defense pointed out that Jones's offenses were low-level property crimes and that her conduct neither caused nor threatened serious bodily injury. See RCW 13.40.150(h)(i) (mitigating factor). Jones's counsel primarily argued that incarcerating juveniles was harmful and counterproductive.

The juvenile court imposed a manifest injustice disposition, entered findings of fact, and adopted the JPC's recitations in the probation report regarding Jones's "family situation, educational situation, mental and physical health issues, drug and alcohol issues, and performance while previously on supervision and on conditions of release." The court found that Jones had 11 prior convictions, and in the span of 2 years, she had 19 warrants for violating probation or conditions of supervision and 18 warrants resulting from running away from prior placements. The court also found that Jones failed to appear for mandatory court hearings resulting in bench warrants on 12 occasions in the same 2 year span. This behavior made it "impossible" to provide Jones with the services she needed in the community. Based on court records, the court also found that Jones committed other criminal offenses that were uncharged, that additional charges were dismissed through negotiations, and that she continued to reoffend while cases were pending.

The court determined that Jones had a "substantial" need for substance abuse treatment, noting that she did not dispute her need for treatment, but argued that she could successfully complete that treatment in the community.

The court found that the standard range of local sanctions would not allow sufficient time for Jones to complete the services she needed and that she would not engage in those services outside of confinement.

The court imposed a manifest injustice disposition of 42 to 52 weeks of confinement at a JRA facility on the following bases:

> The respondent's significant substance abuse and welfare needs will require more treatment and counseling than can be accomplished with local sanctions. This is a basis to depart from the standard range.

> The respondent has significant criminal history, some of which is of a similar nature to this offense, and has continuing, uncharged and dismissed criminal conduct. The respondent continued to offend while cases were pending. The respondent also failed to comply with court orders. In light of these reasons, the standard range is too lenient.

The court also stated that "[e]ither one of these conclusions regarding aggravating circumstances is a substantial and compelling reason, standing alone, sufficient to justify the length of the disposition imposed."

Jones appeals.

## DISCUSSION

A juvenile court may depart from a standard range disposition only if it concludes, and enters reasons for its conclusion, that a standard range disposition would effectuate a manifest injustice. RCW 13.40.160(2); State v. Tai N., 127 Wn. App. 733, 741, 113 P.3d 19 (2005); State v. J.N., 64 Wn. App. 112, 113-14, 823 P.2d 1128 (1992). A "manifest injustice" results if a standard range disposition "would impose a serious, and clear danger to society in light

4

of the purposes" of the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW. RCW 13.40.020(19). These purposes include protecting citizens from criminal behavior, making the juvenile offender accountable for her behavior, providing rehabilitation and reintegration of juvenile offenders, and providing necessary treatment for juvenile offenders. RCW 13.40.010(2)(a), (c), (f), (g); State v. K.E., 97 Wn. App. 273, 279, 982 P.2d 1212 (1999). In other words, "[t]he need for rehabilitation or treatment, the need to protect society from dangerous offenders, and the previous failure of noncustodial treatment or supervision are reasons that can support a sentence outside the standard range." State v. Tauala, 54 Wn. App. 81, 86, 771 P.2d 1188 (1989).

I.    Detention of Juveniles

Jones contends that, as a matter of policy, incarcerating juveniles for minor offenses is contrary to the purposes of the JJA. She relies on a series of United States Supreme Court cases including Roper v. Simmons, 543 U.S. 551, 568, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); Graham v. Florida, 560 U.S. 48, 76, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); and Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). She also relies on a number of statistical studies and scholarly articles calling into question the effectiveness of incarcerating youthful offenders.

Roper, Graham, and Miller involve the application of the Eighth Amendment to the sentencing of juveniles as adults in the context of the death penalty or life without parole sentences. These cases provide no support for

the position that the detention of juveniles for any duration is unconstitutional or otherwise impermissible. As the State points out, the purposes of the JJA include the facilitation of treatment and accountability and secure detention is one of the endorsed means toward achieving those ends. RCW 13.40.0357. The ability of courts in juvenile proceedings to deviate from the recommended standard range is not limited to particular crimes; juvenile courts have the discretion to impose manifest injustice dispositions in any type of case in recognition of the myriad of factors that may be relevant to the purposes of the act. As here, where the legislature has weighed the competing policy considerations, we decline to substitute our judgment for its determination.

## II. Aggravating Factors

Jones next contends that the record does not support the court's reasons for imposing a manifest injustice disposition. She claims that while the trial court imposed detention primarily to provide access to treatment, its determination that she would not be successful in community-based treatment was unfounded. According to Jones, she was previously unable to engage in treatment only because the Department did not provide appropriate "placements that addressed her underlying trauma." Furthermore, she contends that the nature of her criminal history did not warrant a manifest injustice disposition, because her convictions involved minor offenses and she had no prior felony convictions.

6

RCW 13.40.150(3)(h) provides a list of aggravating factors which the juvenile court should consider to determine whether a manifest justice disposition is justified. Our courts have also consistently approved the consideration of nonstatutory factors. See, e.g., State v. T.E.H., 91 Wn. App. 908, 917-18, 960 P.2d 441 (1998) (high risk that a juvenile will reoffend is a valid ground for a manifest injustice disposition); State v. S.H., 75 Wn. App. 1, 11-12, 877 P.2d 205 (1994) (high risk to reoffend and the need for treatment are valid grounds for a manifest injustice disposition), abrogated on other grounds by State v. Sledge, 83 Wn. App. 639, 922 P.2d 832 (1996). Juvenile courts may consider both statutory and nonstatutory factors. State v. J.V., 132 Wn. App. 533, 540-41, 132 P.3d 1116 (2006). In reviewing a manifest injustice disposition, the appellate court determines whether (1) the record supports the reasons given by the juvenile court to depart from the standard range, (2) those reasons clearly and convincingly support the manifest injustice disposition, and (3) the disposition imposed is neither clearly excessive nor too lenient. RCW 13.40.230(2); State v. Moro, 117 Wn. App. 913, 918-19, 73 P.3d 1029 (2003); State v. Tai N., 127 Wn. App. at 743.

The record here amply supports the juvenile court's determination that Jones was in need of treatment and was not amenable to community-based treatment. Jones does not dispute that she has untreated substance abuse and mental health issues. And, as explained, responding to a need for treatment is an appropriate basis for a manifest injustice disposition. State v. Duncan, 90

No. 76258-3-I/8

Wn. App. 808, 812, 960 P.2d 941 (1998); S.H., 75 Wn. App. at 12; J.N., 64 Wn. App. at 114-15.

Jones had an extensive record of noncompliance with conditions of supervised release and behavior that made it impossible for the Department to provide community-based treatment. She was admitted to an inpatient treatment program in 2015, but refused to participate and left the facility after two days. According to the record, on every occasion that she was released from detention, Jones immediately ran away to live a transient lifestyle and refused to live in any placement approved by the Department. Unless Jones was in detention, her whereabouts were generally unknown and the Department was unable to provide any services to her. Jones's counsel acknowledged that it was not a matter of the appropriateness of any particular placement. Rather, Jones simply "doesn't like being around people," would not voluntarily stay in any placement arranged by the Department, and will only stay where she chooses.

The seriousness of the juvenile's current offenses need not be a determinative factor. In State v. Taylor, 42 Wn. App. 74, 75, 709 P.2d 1207 (1985), the juvenile was convicted of a property crime and faced a standard range disposition of 30 days detention, but received a sentence of 65 weeks of confinement. According to the court, the juvenile had

a recent criminal history[;] he has a record of delinquency and incorrigibility; . . . he was on parole when he committed the instant offenses [second degree criminal trespass and vehicle prowling] and has violated conditions of parole and rules set by various

8

No. 76258-3-I/9

> authority figures, including parents, schools, courts; . . . he has received leniency and other treatment and has not been receptive; he has not been made accountable for his actions; he has no regard for the property or safety of others; he has a drug and alcohol problem; he needs the structure, intensive treatment, training and supervision that only an institution can provide.

Id. at 77.

These facts were sufficient to support the manifest injustice disposition and a term of 65 weeks was not "clearly excessive." Id. at 77-78. Likewise here, in addition to Jones's need for treatment, she had a substantial history of repeated criminal conduct and noncompliance with court orders and conditions of supervision. The juvenile court judge, who was well acquainted with Jones and her history, reasonably found that further local sanctions would be futile.

Jones's need for treatment in a secure a stable environment, independently justified a manifest injustice disposition. This court may affirm a manifest injustice disposition as long as one of the factors supported by the record clearly and convincingly supports the disposition and the court can determine that the juvenile court would have entered the same disposition based on that valid aggravating factor. K.E., 97 Wn. App. at 284; S.H., 75 Wn. App. at 12; see State v. N.E., 70 Wn. App. 602, 607, 854 P.2d 672 (1993). In this case, the court made an explicit finding that it would have imposed the same disposition based on either one of the aggravating factors.

III.   Impermissible Factors

Jones claims that the court erred by relying on uncharged criminal conduct, considering her economic and dependent status, and committing her

9

to a JRA facility simply to provide a "housing option." See RCW 13.40.150(4)(e) (court may not consider dependency status in considering punishment); RCW 13.40.150(5) (a court may not commit a juvenile to a state institution *solely* because of a lack of facilities in the community).

The trial court found that according to court records, Jones committed other criminal offenses that were either uncharged or dismissed in accordance with global negotiations that did not affect her offender score. RCW 13.40.150(1) mandates that a juvenile court consider the State's argument, all predisposition reports, and "all relevant and material evidence." Nothing in the statute prohibits consideration of criminal acts, including dismissed charges and police contacts, that do not result in adjudications. See State v. Strong, 23 Wn. App. 789, 791-92, 599 P.2d 20 (1979).

There is nothing in the record to suggest that the juvenile court imposed a manifest injustice disposition because of Jones's dependent status or economic circumstances. Instead, the court found that Jones lacked stability in the community and was not compliant with the Department's placements. The record, including statements of Jones's family members, caseworkers, and Jones herself, supports the court's finding. And, the finding, in turn, supports the court's determination that Jones would not be amenable to treatment outside of a secure and structured environment.

In addition, the record does not indicate that the court imposed detention because of a lack of treatment facilities or placement options in the community.

10

Jones claims that the court characterized JRA detention as a "housing option." But, in fact, she quotes the prosecutor's statement, who was making the point that JRA detention would primarily serve the purpose of providing access to needed treatment and services before Jones turned 18.

IV.    Length of Disposition

Jones contends that her disposition is clearly excessive in comparison with the average adult sentence for a property offense.  She also maintains that only a small percentage of juveniles are detained for the commission of low-level offenses and points out that the prosecutor recommended a shorter term of detention than the court imposed.  Even if a manifest injustice disposition was appropriate, Jones argues that the disposition was beyond what was required to meet her treatment needs and was therefore, clearly excessive.

A manifest injustice disposition is excessive when the disposition cannot be justified by any reasonable view taken from the record.  State v. E.J.H., 65 Wn. App. 771, 776, 830 P.2d 375 (1992).  Once a manifest injustice disposition is legally supported, the court reviews the length of disposition imposed for manifest abuse of discretion.  State v. M.L., 134 Wn.2d 657, 660, 952 P.2d 187 (1998).

At the disposition hearing, the State explained that that the drug and alcohol program available at a JRA facility generally requires 10 weeks.  But, youth who have been "historically resistant" to treatment often must repeat the program.  The State further explained that mental health programs generally

run sequentially to the drug and alcohol programs. The JCP's recommendation was based on estimates that Jones would require 24 weeks of substance abuse treatment and support, 24 weeks of mental health treatment, and 24 weeks of academic and vocational intervention. The manifest injustice disposition of 42-52 weeks was neither clearly excessive nor unsubstantiated in light of these estimates.

V.    Breach of Plea Agreement

Jones claims that, because the State failed to present evidence and prove that she violated the terms of the plea agreement, the State was required to adhere to its agreement to recommend probation.

"Due process requires a prosecutor to adhere to the terms of the [plea] agreement." State v. Sledge, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997). "The State fulfills its obligations if it acts in good faith and does not contravene the defendant's reasonable expectations that arise from the agreement." State v. McInally, 125 Wn. App. 854, 861-62, 106 P.3d 794 (2005). A defendant who fails to comply with the terms of a plea agreement, loses the right to enforce it. Id. at 867.

If there is a genuine factual dispute as to whether the agreement was breached, remand for an evidentiary hearing is required. In re Pers. Restraint of James, 96 Wn.2d 847, 850, 640 P.2d 18 (1982). But, if no question exists as to breach, we need not order an evidentiary hearing. See State v. Hall, 32 Wn.

App. 108, 110, 645 P.2d 1143 (1982) (where defendant did not object to sentence and admitted breach, remand was not necessary).

The agreement between Jones and the State allowed the State to increase its recommendation if she violated conditions of release. This is exactly what happened. There was no dispute that Jones did not remain in her approved placement, which was a condition of her release pending disposition. The defense did not request an evidentiary hearing in its briefing or at the hearing. Jones's counsel merely pointed out that she did not commit any new crimes while released, which, from her perspective, was the most important condition of release. In these circumstances, there is no need to remand for an evidentiary hearing. Jones conceded that she did not stay in her approved placement and based on the terms of the plea agreement, the State had the discretion to increase the sentencing recommendation.

VI.    Statement of Additional Grounds

In a statement of additional grounds, Jones argues that she "should have [her] time dropped" because she was not prosecuted for another charge, a violent offense involving a firearm. While not entirely clear, she appears to refer to burglary and robbery offenses stemming from an incident that occurred around the same time as the current offenses. When the JPC created his report, these offenses had been referred to the prosecuting attorney's office.

The fact that a more serious charge was apparently dismissed does not support any of the statutory mitigating factors. If anything, this fact weighs in favor of, not against, the manifest injustice disposition imposed by the court.

Jones also reiterates counsel's argument that the court imposed detention due to a lack of placement options in the community. However, as explained, the court's disposition was based on its assessment of Jones's significant treatment needs and its determination that those needs could only be addressed by a period of confinement in a JRA facility.

We affirm.

Appelwick, J

WE CONCUR:

Trickey, J