[No. 28148-8-I.   Division One.   December 31, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH ALBERT DECKER, *Petitioner.*

*James W. Conroy* of *Society of Counsel Representing Accused Persons,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Greg R. Hubbard, Assistant Chief Deputy,* for respondent.

COLEMAN, J. — Joseph A. Decker appeals the trial court's order compelling him to attend a predisposition psychological evaluation without the presence of counsel. Decker argues that the order violates his privilege against self-incrimination and his right to counsel. He also argues that the trial court erred in granting him use immunity for information obtained during the evaluation about unadjudicated crimes. We affirm.

On March 7, 1991, Decker, a juvenile, participated in an assault on Vinton Eberly. During the assault, Decker stepped on Eberly's eyeglasses, destroying them. The State charged Decker with one count of fourth degree assault and one count of third degree malicious mischief.

Pursuant to a plea agreement with the State, Decker pleaded guilty to the assault charge, and the State dropped the malicious mischief charge. A psychological evaluation was scheduled to take place prior to disposition of the case. However, Decker's attorney objected to the evaluation on the ground that Decker might make statements that could

incriminate him in other, unadjudicated and uncharged, matters.

The trial court ordered Decker to submit to the evaluation and prohibited counsel from attending. The court also imposed a protective order, stating that "any discussion with evaluator in reference to matters that have not been adjudicated shall be granted use immunity." The trial court granted Decker's motion to stay proceedings pending resolution of this issue on appeal. This court granted Decker's motion for discretionary review.

We first decide whether the trial court erred in compelling Decker to attend a predisposition psychological evaluation without the presence of counsel.

Criminal defendants may not be compelled to testify against themselves. U.S. Const. amends. 5, 14; *Estelle v. Smith*, 451 U.S. 454, 462, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981). Criminal defendants also have the right to assistance of counsel at all critical stages of the proceedings. U.S. Const. amend. 6; *Estelle*, at 470 (citing *Coleman v. Alabama*, 399 U.S. 1, 7-10, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970) (plurality opinion); *Powell v. Alabama*, 287 U.S. 45, 57, 77 L. Ed. 158, 53 S. Ct. 55, 84 A.L.R. 527 (1932)). These procedural protections apply to juvenile adjudicatory proceedings; however, the extent to which they apply to juvenile postadjudicatory proceedings has been left open by the Supreme Court. *See In re Gault*, 387 U.S. 1, 31 n.48, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967).

Several cases are pertinent to our discussion of a criminal defendant's Fifth and Sixth Amendment rights in the context of presentencing interviews and evaluations. In *Estelle v. Smith, supra,* the defendant was required to submit to a pretrial psychiatric examination. Subsequently, he was found guilty of murder and sentenced to death. During his sentencing hearing, the psychiatrist, who was the State's only witness, testified regarding the defendant's future dangerousness. *Estelle*, at 460. The Supreme Court held that the defendant's Fifth and Sixth Amendment rights were violated. Specifically, the Court held that the defendant had the

right to be warned that his statements could be used against him and that he had the right to consult with counsel prior to the evaluation. *Estelle*, at 468-69.

In *State v. Escoto*, 108 Wn.2d 1, 735 P.2d 1310 (1987), the court declined to extend *Estelle* to a case involving a juvenile convicted of a noncapital offense. The juvenile had pleaded guilty to second degree theft. *Escoto*, at 2. Prior to sentencing, the trial court ordered him to submit to a psychological evaluation. However, the trial court limited the evaluation to "matters for which the juvenile had been found guilty and not any unadjudicated charge." *Escoto*, at 3. Based in part on the psychologist's written report, the trial court concluded that the juvenile was a danger to society and imposed an exceptional sentence. *Escoto*, at 4.

█ Upholding the sentence, the court refused to apply *Estelle*. *Escoto*, at 4. The court distinguished *Estelle* primarily on the grounds that it was a death penalty case. The court also relied on a statement by the *Estelle* Court that not all types of presentencing examinations present the same Fifth Amendment concerns as the one in that particular case. *Escoto*, at 5-6 (quoting *Estelle*, at 469 n.13). In her concurring opinion, Justice Durham further distinguished *Estelle* on the basis of differences between the adult and juvenile criminal systems. She stated:

> It is essential to consider the applicability of the privilege against self-incrimination to the circumstances of this case in light of the unique rehabilitative purpose of the disposition of juveniles. Because it is crucial for the court to have access to information obtained from the psychological evaluation . . . , I believe that less stringent application of the privilege against self-incrimination is warranted under these circumstances than in an adult setting.

(Footnote omitted.) *Escoto*, at 10-11 (Durham, J., concurring). Apparently agreeing with this point, the *Escoto* majority suggested that, in the juvenile system, the privilege against self-incrimination should be applied differently depending on whether the proceeding is adjudicatory or dispositional. *Escoto*, at 7 (quoting RCW 13.40.140(8)).

250

*Escoto* clearly sanctions the use of presentencing psychological evaluations in noncapital juvenile cases. *See Escoto*, at 6-7. However, neither *Estelle* nor *Escoto* answers the question of whether a criminal defendant, juvenile or adult, is entitled to have his attorney present during the presentencing psychological evaluation. In *Estelle*, the defendant argued only that he had a right to consult with his attorney prior to the interview. In a footnote, the Court stated:

> Respondent does not assert, and the Court of Appeals did not find, any constitutional right to have counsel actually present during the examination. In fact, the Court of Appeals recognized that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination."

*Estelle*, at 470 n.14 (quoting *Smith v. Estelle*, 602 F.2d 694, 708 (5th Cir. 1979)). In *Escoto*, the court cited with approval the fact that the trial court had permitted counsel to be present during the examination. *Escoto*, at 7. However, the court did not address the issue of whether the defendant had a constitutional right to have counsel present. *Escoto*, at 6.

In the context of presentencing interviews with probation officers, this court has held that juveniles convicted of noncapital offenses do not generally have a right to presence of counsel. *State v. P.B.T.*, 67 Wn. App. 292, 834 P.2d 1051 (1992); *see also Brown v. Butler*, 811 F.2d 938, 941 (5th Cir. 1987) (counsel's presence not constitutionally required because presentencing interview is not a critical stage of the proceedings); *Baumann v. United States*, 692 F.2d 565, 578 (9th Cir. 1982) (defendants in noncapital cases do not have constitutional right to have counsel present during presentencing interviews).

In *P.B.T.*, the court held that, under the Fifth Amendment, a juvenile has the right to the presence of counsel during a presentencing interview only if (1) the juvenile affirmatively requests that counsel be present, and (2) there are pending charges that are closely related to the charge which has been adjudicated. *P.B.T.*, at 300. The court reasoned that this rule was necessary to protect the defendant's

right to remain silent with respect to the pending charge. *P.B.T.*, at 300. The court did not, however, believe that the presence of counsel was required in every case. As the court stated:

> Although we agree that allowing counsel at such interviews may be the better practice and may contribute to a greater appearance of fairness, we do not think that such a practice is mandated by the constitution or the requirements of the orderly administration of justice.

*P.B.T.*, at 298.

■ We conclude that the law established by cases dealing with presentencing interviews should be applied to the present case. Presentencing interviews and psychological examinations are both used to help the trial court determine an appropriate sentence, and the same constitutional concerns appear to be raised by both. Overall, the case law indicates that, absent a showing of special circumstances, defendants in noncapital cases do not have a constitutional right to have counsel present during presentencing interviews. This rule should also apply in the context of psychological examinations.[1] It makes sense particularly in the juvenile context, where the defendant's right against self-incrimination may be less stringently applied after adjudication than in an adult setting. *See State v. Escoto*, 108 Wn.2d 1, 10-11, 735 P.2d 1310 (1987) (Durham, J., concurring).

The trial court in this case, as well as the psychologist, expressed concern that the presence of counsel would undermine the evaluation. However, other procedural protections were provided. The trial court stated that it would instruct the psychologist to avoid discussion of unadjudicated matters and that any information obtained could not be used in a subsequent proceeding. Under these circumstances and

---

[1] We recognize that in *United States v. Herrera-Figueroa*, 918 F.2d 1430, 1434 (9th Cir. 1990), the Ninth Circuit determined that a court rule allowing the presence of counsel during presentencing interviews was necessary to ensure even-handed sentencing. However, the court declined to overrule its holding in *Baumann v. United States, supra*, that the presence of counsel was not required by the constitution. *Herrera-Figueroa*, at 1433.

the law as set forth in the federal cases, *Escoto*, and *P.B.T.*, Decker's constitutional rights were not violated.

Finally, we consider whether the trial court erred in granting Decker use immunity over the prosecutor's objection.

Superior Court Criminal Rule 6.14 provides that a court may grant immunity to a witness "on motion of the prosecuting attorney". Decker argues, and the State agrees, that a court may grant immunity only on motion of the prosecutor. The trial court, on the other hand, interpreted CrR 6.14 as giving the court authority to grant immunity in "some extreme cases".

Decker and the State also argue that *State v. McCullough*, 49 Wn. App. 546, 744 P.2d 641 (1987) prohibits the trial court from granting use immunity. In *McCullough*, the defendant was found guilty of first degree robbery. Prior to sentencing, the State granted the defendant immunity under CrR 6.14 so that he would testify against another participant in the robbery. *McCullough*, at 547. The Court of Appeals held that under CrR 6.14, the trial court was precluded from entering a judgment and sentence against the defendant. The court stated:

> Where it applies, CrR 6.14 does more than prohibit the *use* of compelled testimony; it requires that a witness not be "subjected to criminal penalty... on account of any transaction, matter, or fact concerning which he has been ordered to testify[.]"

*McCullough*, at 550.

■ We believe that the parties' concerns are legitimate. CrR 6.14 provides only for transactional immunity and does not govern the issue presented here. Nonetheless, we believe that a trial court, under these circumstances, has the inherent authority to issue this type of protective order.

Here, the trial court was merely limiting the scope of the evaluation and attempting to fashion a means by which to protect Decker's Fifth Amendment rights. The protective order was not an attempt to interfere with the prosecutorial function. This is especially true because there were no charges pending against Decker. Also, the prosecutor would still be at liberty to prosecute matters which were discovered

independently of the evaluation but which also may have been discussed during the evaluation, so long as those discussions did not lead to the discovery of any evidence.

In addition, this type of protective order for unadjudicated matters discussed during an evaluation was upheld in *Escoto*. *Escoto*, at 5. In *Escoto*, the trial court similarly limited the psychological evaluation, stating that it "would relate only to matters for which the juvenile had been found guilty and not any unadjudicated charge." *Escoto*, at 3. The Supreme Court agreed that limiting the evaluation in this manner was a legitimate means of protecting the defendant's right against self-incrimination:

> The trial court was seeking the most thorough information it could obtain to help this youngster and still protect society against an increasingly dangerous child. *The court was precisely careful to limit use of the evaluation to matters already adjudicated* and to permit presence of counsel.

(Italics ours.) *Escoto*, at 7. We believe the *Escoto* court would sanction the trial court's use of immunity in this situation.

The order of the trial court is affirmed.

WEBSTER, A.C.J., and SCHOLFIELD, J., concur.

Review denied at 121 Wn.2d 1016 (1993).