[Nos. 19990-8-III; 20770-6-III. Division Three. November 5, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. RAYMOND A. BANKES, *Appellant*.

*William D. Edelblute*, for appellant.

*James L. Nagle, Prosecuting Attorney*, and *Joseph M. Golden* and *Gabriel E. Acosta, Deputies*, for respondent.

SWEENEY, J. — A convicted sex offender appeals his exceptional sentence. He assigns error to the court's use of his Special Sex Offender Sentencing Alternative (SSOSA) evaluation to support its findings of aggravating factors underlying an exceptional sentence. We agree that, without appropriate warnings, a defendant's admissions of prior conduct made during a SSOSA psychological evaluation cannot be used against him at sentencing. We therefore reverse the sentence and remand for resentencing.

## FACTS

Raymond Bankes walked into the Walla Walla Police Department and confessed to unspecified sexual misconduct with a minor. The victim, a 16-year-old boy, confirmed that Mr. Bankes had been molesting him for about a year. The State charged Mr. Bankes with second degree rape. After plea bargaining, the State reduced the charges to one count of third degree child molestation before the victim

turned 16 and one count of third degree rape after he turned 16.[1] Mr. Bankes pleaded guilty.

Mr. Bankes had no prior convictions. His standard range was, therefore, 15 to 20 months. The State recommended 15 months. The presentence investigation report (PSI) recommended 20 months.

*SSOSA Report.* At Mr. Bankes's request, the court ordered a SSOSA evaluation. The State reserved any recommendation on SSOSA pending the evaluation.

Ronald D. Page, PhD, evaluated Mr. Bankes and wrote a report. He gave the report to defense counsel, who kept it. The prosecutor asked the court to order production of the report. The court held a hearing. Defense counsel argued that he had requested the psychological evaluation solely to plan defense strategy at sentencing, and not for the benefit of the court. The court ordered counsel to file the report with the court. Counsel complied.

*Sentencing Hearing.* At the sentencing hearing, the court allowed the defense to examine Dr. Page.

Defense counsel elicited Dr. Page's opinion that Mr. Bankes was manifestly unsuitable for SSOSA. Also Dr. Page found that Mr. Bankes exhibited a "predatory pattern" in his sexual conduct and had a long history of bisexuality, and that, statistically, bisexuals and homosexuals have a higher recidivism rate. Report of Proceedings (RP) at 34-35. Dr. Page recommended against SSOSA, but had no opinion as to whether Mr. Bankes might benefit from sex offender treatment in prison. Dr. Page also admitted that, a year earlier, he had been retained as an expert by the plaintiff in a civil suit filed against Mr. Bankes. The suit followed allegations of Mr. Bankes's misconduct with a patient that resulted in the loss of Mr. Bankes's nursing license.

The court imposed exceptional sentences of 60 months on each of the two counts to be served consecutively.

*Aggravating Factors.* The court found two substantial and compelling reasons justifying an exceptional sentence.

---

[1] RCW 9A.44.089 and RCW 9A.44.060(1)(a) respectively.

First, the court cited the statutory aggravating factor of an ongoing pattern of multiple incidents of sexual abuse of the same victim over a prolonged period of time. Former RCW 9.94A.390(2)(g) (1999).[2] Second, the court invoked the non-statutory factor of future dangerousness, based upon findings that "there were similar acts of this nature and that he is not amenable to treatment." RP at 87.

*"Criminal" History.* The record contains abundant accounts of episodes from Mr. Bankes's sexual history. These accounts form the basis for the sentencing court's finding of prior "similar criminal acts." Clerk's Papers (CP) at 133. The primary source of this information is Mr. Bankes's admissions to Dr. Page.

Mr. Bankes told Dr. Page he had sex with his (Bankes's) mother, starting at age 17. He was molested by a strange man in a park when he was 8 or 9 years old and by a Walla Walla College professor as an adult. He admitted that 24 years earlier, at age 18 or 19, he had molested his 10-year-old stepbrother. At age 18, he had sex in Brussels, Belgium, with a couple of men. He had numerous anonymous homosexual encounters over the years, mostly at truck stops during an intermittent career as a driver. Because of the anonymous nature of these contacts, Mr. Bankes could not swear that none of them had involved minors. He had used pornography, including internet gay chat rooms. Dr. Page reported that Mr. Bankes had a history of "excessive" masturbation and frequent casual sexual encounters with both men and women. CP at 57. As a nurse, Mr. Bankes admitted to several homosexual contacts with colleagues, patients, and visitors at the medical center. He was fired and lost his license in 1995 when a patient complained. He was unfaithful to his wife during his 10-year marriage.

The record contains various other admissions by Mr. Bankes, including statements to the PSI investigator. Also included are numerous pages of dubious admissibility, including depositions and psychological evaluations in con-

---

[2] *Recodified as* RCW 9.94A.535(2)(g) by Laws of 2001, ch. 10, § 6.

nection with the 1995 civil action against Mr. Bankes. There are also letters to the judge from Mr. Bankes's ex-wife and relatives of the hospital patient.

The court found evidence of prior similar criminal acts in the misconduct with the hospital patient and "other incidents of a sexual nature" in high school, Brussels, and at rest stops. RP at 89. Also it found "a lengthy history of sexual abuse and activity," including activity with his mother, the incident in Europe, the business with the Walla Walla professor, and the hospital patient and others at the hospital. RP at 89-90. The court also considered the 10-year-old stepbrother, the possibility of sexual contact with other minors at rest stops, and the internet pornography and chat rooms. RP at 90.

The court based its finding of nonamenability to treatment on the fact that Mr. Bankes abused the victim in this case despite the problems his prior sexual conduct had caused him in his marriage, employment, and professional standing. The court also noted that Mr. Bankes had already received treatment. RP at 90-91.

*Findings and Conclusions.* The court entered written findings of fact (FF) and conclusions of law. In addition to finding the elements of the charged offenses, FF(a) through (g), (k), (l), and (w), the court found that Mr. Bankes was an admitted sex addict who had "for years[] engaged in homosexual illicit anonymous sexual acts,"[3] FF(h). The court found that Mr. Bankes had "almost no impulse control regarding his own sexual behavior,"[4] FF(i); that his previous voluntary sexual offender treatment had been inadequate, FF(j); that he admitted sexually abusing his stepbrother, FF(m); that he had been sexually abused by others and "willingly became involved in illicit sexual behavior, including intercourse with his mother,"[5] FF(n); that he had engaged in homosexual conduct at the hospital with the

---

[3] Clerk's Papers (CP) at 132.

[4] CP at 132.

[5] CP at 132.

patient, a staff member, and a patient's brother, FF(o); that he admitted "an anonymous, spontaneous homosexual experience in Brussels, Belgium, while in his late teens or early twenties,"[6] FF(p); and "numerous heterosexual and homosexual encounters over the years, many facilitated by his employment as a truck driver,"[7] FF(q).

The court found that Mr. Bankes "engaged in illicit sexual behavior at age 28 with a Walla Walla College professor,"[8] FF(t); that "as a result of his various incidents of sexual misconduct during his marriage, he participated in marital counseling" which was ineffective because Mr. Bankes "continued to participate in sexual misconduct which in part resulted in his divorce in 1997,"[9] FF(u). Finally, the court found that Dr. Page found Mr. Bankes to be "defensive, bisexual, [and] engages in instances of self-exculpation and rationalization and engages in manipulation, grooming and predation,"[10] FF(x); that Dr. Page found him "not to be amenable to treatment, because of the presumable pattern of recidivism, unsuccessful recent treatment and self-exculpatory stance,"[11] FF(y). This showed "a history of similar criminal acts (sexual contact with a victim under age 18 and homosexual sex and intercourse with another to whom the Defendant was not married who either expressed non consent or was unable to consent), and that the Defendant is not likely to be amenable to treatment"[12] based on the Page report, FF(z).

The court concluded that substantial and compelling reasons justified the maximum sentence of 60 months on each count, to run consecutively. This was "necessary to protect the public, to provide sufficient time for the Defen-

---

[6] CP at 133.

[7] CP at 133.

[8] CP at 133.

[9] CP at 133.

[10] CP at 133.

[11] CP at 133.

[12] CP at 133.

dant to benefit from sexual offender treatment in the Department of Corrections and to carry out the other purposes of RCW 9.94A.010." CP at 134.

## DISCUSSION

■ *Standard of Review.* The question before us is whether the sentencing judge violated this defendant's Fifth and Sixth Amendment rights by basing an exceptional sentence on prior sexual activity disclosed during the course of a SSOSA evaluation. Review is de novo. *State v. Curtis,* 110 Wn. App. 6, 11, 37 P.3d 1274 (2002).

*Compelled Production of the Report.* Preliminarily, Mr. Bankes contends that the court erred by ordering defense counsel to surrender the Page report after it was clear that Mr. Bankes was not requesting SSOSA. The State responds that Mr. Bankes had no reasonable expectation that the results of the evaluation would remain confidential. This is because former RCW 9.94A.120(8) (2000)[13] contemplates that the court will order an evaluation, that the report will be made available to the court, and that the court will use it to determine whether the defendant *and the community* will benefit from the alternative sentencing option.

■ Our review of the record suggests that the judge ordered the report to assist him in passing upon whether Mr. Bankes was a candidate for SSOSA. RP at 16-17. Mr. Bankes was a first time sex offender with no criminal history, and so technically he was eligible for SSOSA. Since former RCW 9.94A.120(8) authorizes the court to order a SSOSA report either on its own motion or on a defense request, we conclude that the statute implicitly authorizes the court to receive a copy of it.

*Use of the SSOSA Report.* Mr. Bankes next contends that the SSOSA evaluation has one and only one legitimate purpose: to benefit the defendant by providing a possible alternative to incarceration if SSOSA is found to be appro-

---

[13] *Recodified as* RCW 9.94A.670(3) by Laws of 2001, ch. 10, § 6.

priate. He complains that the court used the report for the exact opposite of this statutory purpose. The court used incriminating admissions in the report against the defendant to impose an exceptional sentence. The State responds that the report was properly admitted for all purposes.

The trial court made two sentencing determinations here—SSOSA and future dangerousness. Consideration of one necessarily excludes consideration of the other. In a typical case, therefore, a judge weighing future dangerousness would not have even ordered a SSOSA report.

The court may order a SSOSA evaluation only after it has determined that the defendant has no criminal history. Former RCW 9.94A.120(8). A finding of future dangerousness, however, requires an affirmative finding of a prior criminal history. Future dangerousness is an aggravating factor that may support an exceptional sentence if the underlying conviction is for a "sex offense" as defined by the Sentencing Reform Act of 1981, former RCW 9.94A.030(37) (2000). *State v. Burkins*, 94 Wn. App. 677, 699, 973 P.2d 15 (1999) (citing *State v. Halgren*, 137 Wn.2d 340, 346, 971 P.2d 512 (1999)). Two conditions must be satisfied: (1) the defendant must have a history of similar *criminal* acts and (2) the defendant must not be amenable to treatment. *State v. Pryor*, 115 Wn.2d 445, 454, 799 P.2d 244 (1990); *State v. Strauss*, 119 Wn.2d 401, 414, 832 P.2d 78 (1992). Mr. Bankes either did or did not have similar criminal history. If he did, the court had no authority to order a SSOSA evaluation. If he did not, future dangerousness was not a possible sentencing issue.

Using Mr. Bankes's unwarned admissions given for the purposes of the SSOSA evaluation as grounds for extending his prison term violated his Fifth Amendment right against self-incrimination. *State v. Tinkham*, 74 Wn. App. 102, 106-07, 871 P.2d 1127 (1994).

The State argues that defendants lose all constitutional protections upon pleading guilty. They do not. "We have consistently recognized that a convicted defendant has a liberty interest which minimal due process protects." *State*

*v. Ammons*, 105 Wn.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986). The Fifth Amendment, for one, applies at sentencing. *State v. Post*, 118 Wn.2d 596, 604, 826 P.2d 172, 837 P.2d 599 (1992).

Thus, unwarned statements made by a convicted defendant to a psychiatrist disclosing prior unconvicted criminal behavior are not permitted to influence the sentencing decision. *Id.* at 605 (citing *Ammons*, 105 Wn.2d at 184). For Fifth Amendment purposes, admissions of deviant sexual behavior are equivalent to confessions of other crimes if they are used to enhance the sentence. *Pens v. Bail*, 902 F.2d 1464, 1466 (9th Cir. 1990).

Specifically, a sentencing court may not consider a court-ordered psychological evaluation in determining future dangerousness unless the defendant was warned before the evaluation that it might be used against him at sentencing. *State v. Chance*, 105 Wn. App. 291, 299, 19 P.3d 490 (citing *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981)), *review denied*, 144 Wn.2d 1012 (2001). The appropriate warnings are those set forth in *Miranda*.[14] *State v. Sargent*, 111 Wn.2d 641, 648, 762 P.2d 1127 (1988). The rule of *Estelle* applies to sentencing when the defendant's unwarned admissions are used as the basis for imposing an exceptional sentence. *Tinkham*, 74 Wn. App. at 106.

The State correctly points out that in *Post*, the court held that the defendant's unwarned statements could be used to justify an exceptional sentence on future dangerousness grounds. In *Post*, however, the defendant had not been in legal jeopardy eight years previously when he made incriminating statements to a prison psychologist evaluating him for work release. And so there had been no realistic threat of self-incrimination at that time. Mr. Bankes, on the other hand, was in jeopardy when he made his unwarned statements to Dr. Page. His sentencing was pending. The

---

[14] *Miranda v. Arizona*, 384 U.S. 436, 467-73, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Post* defendant had prior criminal *convictions* for similar conduct. *Post*, 118 Wn.2d at 610-11. Mr. Bankes did not.

The privilege against self-incrimination generally is not self-executing; the defendant must invoke it. *Id.* at 605. But failure to invoke the privilege is excused if to do so would subject the defendant to some penalty or sanction. *Id.* at 605, 609-10. Here, the court told Mr. Bankes that failure to cooperate fully with the evaluation would eliminate the possibility of his receiving the SSOSA alternative to incarceration. RP at 16. No one alerted him that his cooperation might provide a basis for enhancing his prison sentence.

The State contends that warnings were not required because Mr. Bankes himself requested this evaluation. But this does not make a difference. The purpose of the examination, no matter who requests it, was to help determine whether SSOSA was appropriate. So even if the defense requests an examination, *Miranda* warnings are required. *Battie v. Estelle*, 655 F.2d 692, 702 (5th Cir. 1981); *accord Booker v. Wainwright*, 703 F.2d 1251, 1256 (11th Cir. 1983). When a psychologist goes beyond reporting to the court to further the purpose of the report (SSOSA) and testifies at the penalty phase on a crucial issue like future dangerousness, his role changes. He becomes essentially " 'an agent of the State recounting unwarned statements made in a postarrest custodial setting.' " *Buchanan v. Kentucky*, 483 U.S. 402, 422, 107 S. Ct. 2906, 97 L. Ed. 2d 336 (1987) (quoting *Estelle*, 451 U.S. at 467).

Mr. Bankes submitted to this psychological evaluation for an ostensibly benign purpose. At best, his time behind bars might be reduced under SSOSA. Absent constitutionally prescribed warnings, he was entitled to expect that, at worst, a negative report would result in SSOSA being denied.

## CONCLUSION

The sentence is reversed. The case is remanded for

resentencing before a different judge. The motion to substitute appellate counsel is denied.

KATO, A.C.J., and KURTZ, J., concur.