98 P.3d 136 (2004)
123 Wash.App. 447
STATE of Washington, Respondent,
v.
Juan DIAZ-CARDONA, Petitioner.
No. 53444-1-I.
Court of Appeals of Washington, Division 1.
September 27, 2004.
Dennis McGuire, Seattle, WA, for Appellant.
Erin Ehlert, Senior Deputy Prosecuting Atty, Seattle, WA, for Respondent.
BAKER, J.
Juan Diaz-Cardona appeals a juvenile court's order compelling his participation in a sex offender evaluation. He argues that he properly invoked his Fifth Amendment privilege against self-incrimination and that cooperating with the evaluation might lead to a longer confinement. We agree and conclude that a juvenile may invoke his privilege against self-incrimination and refuse to participate in such evaluations. Accordingly, we reverse the order compelling participation.

*137 I.
Juan Diaz-Cardona pled guilty to one count of child molestation in the second degree. At the time of the offense, Diaz-Cardona was 17 years old and had no prior sex offenses. Before sentencing, the court ordered a sexual deviancy evaluation to determine if Diaz-Cardona was amenable to treatment under the Special Sex Offender Disposition Alternative (SSODA) statute.[1] Diaz-Cardona refused to complete the evaluation, and attempted to invoke his Fifth Amendment privilege against self-incrimination. He argued that information obtained in the evaluation might be used against him at sentencing to impose a longer confinement.
The juvenile court granted the States motion to compel an evaluation. We granted expedited discretionary review.

II.
RCW 13.40.160(3) permits a juvenile court to suspend a sex offense disposition upon the condition that the juvenile participate in community-based sex offender treatment.[2] The statute permits the juvenile, the court, or the state to request the report:
When a juvenile offender is found to have committed a sex offense, other than a sex offense that is also a serious violent offense as defined by RCW 9.94A.030, and has no history of a prior sex offense, the court, on its own motion or the motion of the state or the respondent, may order an examination to determine whether the respondent is amenable to treatment.
The report of the examination shall include at a minimum the following: The respondents version of the facts and the official version of the facts, the respondents offense history, an assessment of problems in addition to alleged deviant behaviors, the respondents social, educational, and employment situation, and other evaluation measures used. The report shall set forth the sources of the evaluators information.
The examiner shall assess and report regarding the respondents amenability to treatment and relative risk to the community. A proposed treatment plan shall be provided.... [[3]]
The ultimate decision whether to impose a SSODA lies completely within the discretion of the juvenile court.[4]
After determining that community-based treatment is appropriate, the juvenile court may impose either a determinate disposition or a manifest injustice disposition falling outside the standard sentencing range.[5] In exercising its discretion to impose a SSODA, the juvenile court is required to assess the offenders amenability to community-based treatment and the relative benefits and risks to society and the offender.[6] But the same circumstances that warrant a SSODA may also support a manifest injustice determination. By providing for suspended manifest injustice dispositions in appropriate cases, the statute clearly permits the juvenile court to consider and plan for the possibility that community-based treatment might fail. In such situations, the juvenile court has the authority to revoke the suspension and reimpose the manifest injustice disposition if the juvenile violates any conditions of community supervision or fails to make satisfactory progress in treatment.[7]
Diaz-Cardona refused to participate in the evaluation because the juvenile court might use that evaluation to impose a manifest injustice disposition. The State takes the position that Diaz-Cardona must complete the SSODA evaluation, arguing that because of the unique nature of juvenile proceedings, *138 Diaz-Cardona has no constitutional privilege against self-incrimination at this stage of the proceedings.
The Fifth Amendment to the United States Constitution prevents a person from being "compelled in any criminal case to be a witness against himself,"[8] and protects an accused from having to provide the State with testimonial or communicative evidence.[9] The United States Supreme Court has held that "the availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites."[10]
In Mitchell v. United States,[11] the Supreme Court held that the sentencing proceeding in a federal criminal prosecution is considered to be part of the "criminal case" so that the Fifth Amendments guarantee of the right to remain silent applies equally to that phase of a criminal case.[12] The Supreme Court has generally rejected the idea that entry of a guilty plea extinguishes the privilege against self-incrimination, explaining that because a sentence has not yet been imposed, the defendant may have a legitimate fear of adverse consequences from further testimony.[13] Any effort by the government to compel the defendant to testify against his will at the sentencing hearing would contravene the Fifth Amendment.[14]
Washington courts have also recognized that an adult defendant has a Fifth Amendment privilege against self-incrimination at the punishment phase of his trial, and therefore, the mere finding of guilt does not terminate the privilege against self-incrimination.[15] Our Supreme Court has recognized that "a convicted defendant has a liberty interest which minimal due process protects,"[16] and has held that the Fifth Amendment applies at sentencing.[17]
We must address whether a juvenile may invoke his privilege against self-incrimination after a determination of guilt, but before sentencing. Several of our prior decisions have addressed the right to confrontation in dispositional hearings. But these cases are not helpful to our analysis. The issue is a juveniles privilege against self-incrimination, not his right to confront potential witnesses.
The Washington statute outlining juvenile protections explains that a juvenile has the same constitutional privilege against self-incrimination as adults:
A juvenile shall be accorded the same privilege against self-incrimination as an adult. An extrajudicial statement which would be constitutionally inadmissible in a criminal proceeding may not be received in evidence at an adjudicatory hearing over objection.[[18]]
Our courts have consistently held that at fact finding hearings, juvenile evidentiary issues are treated the same as in adult criminal proceedings.[19] And at such hearings, a juvenile is entitled to the same privilege against self-incrimination as an adult.[20]
But the State cites to two cases to support its position that juveniles have diminished *139 Fifth Amendment protections in the context of a disposition hearing. In State v. Jacobsen,[21] the juvenile court used a sexual offender evaluation to impose a manifest injustice sentence. But the court expressly noted that the juvenile had waived his privilege against self-incrimination by not asserting his right to remain silent.[22] In State v. Escoto,[23] a juvenile pled guilty to theft. Based on the results of a court-ordered psychological evaluation, the trial court imposed a manifest injustice disposition.[24] The court rejected Escotos attempt to exclude his statements made during the evaluation because the juvenile's attorney had not requested to be present at the evaluation, and because Escoto did not assert his right to silence.[25]
Neither case is on point. We do note, however, that both cases imply that the Fifth Amendment applies at sentencing, and that juveniles may invoke this privilege. In each, the juveniles failure to assert his right to silence determined the outcome of the case. And unlike Jacobsen and Escoto, Diaz-Cardona has invoked his right to silence. As the United States Supreme Court stated in In re Gault,[26] "the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites.'"[27]
RCW 13.40.140(8) provides that a juvenile is entitled to "the same privilege against self-incrimination as an adult."[28] The statute does not limit a juvenile's privilege against self-incrimination to adjudicatory proceedings as it does with a juvenile's right to confrontation.[29] Thus, the statute mandates that juveniles be treated the same as adults and that evidentiary issues be resolved with reference to adult criminal proceedings.
And as the United States Supreme Court cautioned in Gault, courts recognize this privilege both to protect against coerced confessions, and to ensure that an individual's right to silence is protected:
One of its purposes [the privilege against self-incrimination] is to prevent the state, whether by force or by psychological domination, from overcoming the mind and will of the person under investigation and depriving him of the freedom to decide whether to assist the state in securing his conviction. [[30]]
The State asserts that the Fifth Amendment does not apply to the disposition hearing in a juvenile proceeding because the goals of the adult criminal and juvenile systems are quite different. We recognize that this argument has long been put forward as justification for denying constitutional and procedural rights to juveniles.
But in recent years, this argument has lost traction as courts in this state and others have realized juvenile courts function to both rehabilitate and punish.[31] In fact, several goals of the Juvenile Justice Act of 1977(JJA) focus on punishment and victim safety:
(a) Protect the citizenry from criminal behavior;
(b) Provide for determining whether accused juveniles have committed offenses as defined by this chapter;
(c) Make the juvenile offender accountable for his or her criminal behavior;

*140 (d) Provide for punishment commensurate with the age, crime, and criminal history of the juvenile offender.... [[32]]
RCW 13.04.240 states that an adjudication does not constitute conviction of a crime, but many practical differences between the two are disappearing. In 1997, the Legislature amended RCW 13.04.011 to add a definition for "adjudication," explaining that the term "adjudication" has the same meaning as the term "conviction" under the Sentencing Reform Act of 1981 (Chapter 9.94A RCW). Our Legislature has also provided that when calculating offender scores, courts should include juvenile adjudications in the criminal history.[33] And the Legislature provides that a juvenile offender determined to be a continuing and serious threat to the safety of others may be transferred from a juvenile detention facility to the department of corrections.[34]
The ability to remove or expunge juvenile records has also become more difficult. Before the 1997 amendments, a juvenile could have his or her record sealed after two years, and destroyed when the juvenile reached 23 years of age.[35] And a person 18 years of age or older whose criminal history consisted of only one referral for diversion could have his or her record destroyed if two years had elapsed since completion of the diversion agreement.[36] Neither option is available under the 1997 amendment.[37]
The State argues that allowing the Fifth Amendment's privilege against self-incrimination to statements made after a guilty plea might result in a system identical to the criminal system with an orientation towards punishment rather than rehabilitation. We are unable to perceive how providing a juvenile with protection against self-incrimination for statements made before or during a disposition hearing would cause the juvenile courts to focus more on punishment and less on rehabilitation of the juvenile. It is improper for a court to draw an adverse inference from the juvenile's silence,[38] and we trust that the juvenile courts will continue to properly exercise their judicial discretion in deciding an appropriate disposition. Further, as discussed above, our juvenile system has become increasingly punishment-oriented in recent years with amendment's to the JJA, and it is for that reason that a juveniles Fifth Amendment privilege has assumed increased significance.
The State also contends that availability of the Fifth Amendment privilege against self-incrimination during the disposition hearing will unduly restrict the information available to the juvenile court and detrimentally impact the juvenile court's ability to provide for the rehabilitation of the child.
We fully agree that the juvenile court should have available to it as much information as possible to inform its determination of what disposition is appropriate in a given case. But that does not mean that the prosecuting authorities and juvenile courts should be free to acquire such information at the expense of the juvenile's Fifth Amendment rights. As the Supreme Court noted in Estelle v. Smith[39] and later echoed in Mitchell v. United States,[40] "[t]he essence of this basic constitutional principle is `the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'"[41]
*141 While the juvenile may be an important source of information, there are many other sources available that can provide the same information to the investigating officer who is preparing the predisposition evaluation report and social history.[42] Family members can provide detailed information about the juvenile's parents and siblings, family and social environment, educational data, religious activities, employment history, and other relevant background information. A variety of records, including school records and psychological or psychiatric evaluations, can be consulted for other pertinent information. Law enforcement reports may be included in the predisposition report to provide information on the facts of the offense. Of course, the juvenile probation department has at its disposal its own records pertaining to the juvenile which may include prior informal adjustments and deferred adjudications.
Therefore, we reject the State's argument that extending the Fifth Amendment privilege to the disposition hearing will substantially impact the quantity and quality of information available to the juvenile court. Given that the disposition hearing is no longer focused strictly upon rehabilitation of the juvenile, but has become increasingly punishment-oriented, and given our conclusion that extension of the right does not unduly impair the goals and purposes of the juvenile system, we hold that a juvenile must be afforded his Fifth Amendment privilege against self-incrimination through the conclusion of the disposition hearing.
The State posits that because the trial court entered a Decker order, Diaz's rights were adequately protected.[43] In State v. Decker,[44] this court examined a juvenile court's inherent authority to issue protective orders. The court affirmed a protective order granting a juvenile use immunity in a criminal case for information about unadjudicated crimes when the juvenile, who had been found guilty of a criminal offense, was compelled to participate in a predisposition psychological evaluation without his attorney present.[45]
But even with the entry of a Decker order, the juvenile court may still use the SSODA report to impose a manifest injustice sentence. Decker created a single narrow exception to the normal rule that granting immunity is a prosecutorial executive function.[46] Juvenile courts can consider admitted criminal conduct at a disposition hearing to determine the juveniles risk of reoffending. In State v. T.C.,[47] at the disposition hearing a juvenile's probation counselor disclosed uncharged offenses similar to the crime of which the juvenile had been found guilty. On appeal, the court concluded that the trial court properly considered these other instances of improper sexual conduct to which the juvenile admitted but for which he had not been charged.[48] Our court explained that this other conduct was relevant for determining the juvenile's risk of reoffending.[49] The court also held that this evidence could be used to impose a disposition beyond standard range on his guilty plea to first degree child molestation.[50]
Although we have not previously examined a juvenile court's authority to require participation in such evaluations, we have concluded that a court cannot require such evaluations for adults.
In State v. Bankes,[51] a first time offender pled guilty to child molestation and rape. He requested a court-ordered SSOSA evaluation. *142 [52] A SSOSA provides convicted first time sex offenders with the opportunity to receive treatment instead of serving a criminal sentence:
If the court finds the offender is eligible for this alternative, the court, on its own motion or the motion of the state or the offender, may order an examination to determine whether the offender is amenable to treatment....
....
If the court determines that this alternative is appropriate, the court shall then impose a sentence or, pursuant to RCW 9.94A.712, a minimum term of sentence, within the standard sentence range. If the sentence imposed is less than eleven years of confinement, the court may suspend the execution of the sentence and impose the following conditions of suspension:
(a) The court shall place the offender on community custody for the length of the suspended sentence, the length of the maximum term imposed pursuant to RCW 9.94A.712, or three years, whichever is greater, and require the offender to comply with any conditions imposed by the department under RCW 9.94A.720.
(b) The court shall order treatment for any period up to three years in duration. The court, in its discretion, shall order outpatient sex offender treatment or inpatient sex offender treatment, if available. A community mental health center may not be used for such treatment unless it has an appropriate program designed for sex offender treatment. The offender shall not change sex offender treatment providers or treatment conditions without first notifying the prosecutor, the community corrections officer, and the court. If any party or the court objects to a proposed change, the offender shall not change providers or conditions without court approval after a hearing.[[53]]
The evaluation concluded that Bankes was not suitable for the SSOSA, and that he exhibited a "predatory pattern" in his sexual conduct.[54] Based on the report, the court found two aggravating factors and imposed an exceptional sentence upward.[55]
On appeal, we held that using Banke's admissions as grounds for extending his prison term violated his Fifth Amendment right against self-incrimination, concluding that "unwarned statements made by a convicted defendant to a psychiatrist disclosing prior unconvicted criminal behavior are not permitted to influence the sentencing decision."[56] We then concluded that the trial court could not use Bankes evaluation to impose an exceptional sentence.[57] We agree with Bankes reasoning and conclude that this rationale applies equally to juveniles. For Fifth Amendment purposes, admissions of deviant sexual behavior are equivalent to confessions of other crimes if they are used to enhance the sentence.[58]
We conclude that a court cannot require a juvenile to participate in a SSODA before sentencing even with a protective order in place, because it violates the juveniles privilege against self-incrimination.
REVERSED.
APPELWICK and ELLINGTON, JJ., concur.
NOTES
[1] RCW 13.40.160.
[2] RCW 13.40.160(3) provides that "[w]hen a juvenile offender is found to have committed a sex offense, other than a sex offense that is also a serious violent offense as defined by RCW 9.94A.030," the juvenile court may impose a SSODA suspended sentence. See also RCW 13.40.020(25) ("`Sex offense' means an offense defined as a sex offense in RCW 9.94A.030.").
[3] RCW 13.40.160(3).
[4] State v. J.W., 84 Wash.App. 808, 811, 929 P.2d 1197 (1997).
[5] RCW 13.40.160(3)(a).
[6] RCW 13.40.160(3).
[7] RCW 13.40.160(a), (b).
[8] U.S. Const., amend. V; Mitchell v. U.S., 526 U.S. 314, 327, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).
[9] Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
[10] Estelle v. Smith, 451 U.S. 454, 462, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (quoting In re Gault, 387 U.S. 1, 49, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).
[11] 526 U.S. 314, 327, 119 S.Ct. 1307, 1314, 143 L.Ed.2d 424 (1999).
[12] See Mitchell, 526 U.S. at 327, 119 S.Ct. 1307.
[13] Mitchell, 526 U.S. at 327, 119 S.Ct. 1307.
[14] Mitchell, 526 U.S. at 327, 119 S.Ct. 1307; Estelle, 451 U.S. at 462, 101 S.Ct. 1866.
[15] State v. Post, 118 Wash.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992).
[16] State v. Ammons, 105 Wash.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986).
[17] Post, 118 Wash.2d at 604-05, 826 P.2d 172, 837 P.2d 599.
[18] RCW 13.40.140(8).
[19] State v. Linares, 75 Wash.App. 404, 407-08, 880 P.2d 550 (1994).
[20] Linares, 75 Wash.App. at 409, 880 P.2d 550.
[21] 95 Wash.App. 967, 977 P.2d 1250 (1999).
[22] Jacobsen, 95 Wash.App. at 973, 977 P.2d 1250.
[23] 108 Wash.2d 1, 735 P.2d 1310 (1987).
[24] Escoto, 108 Wash.2d at 4, 735 P.2d 1310.
[25] Escoto, 108 Wash.2d at 5, 735 P.2d 1310.
[26] 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
[27] Gault, 387 U.S. at 49, 87 S.Ct. 1428.
[28] Linares, 75 Wash.App. at 409, 880 P.2d 550.
[29] RCW 13.40.140(7).
[30] Gault, 387 U.S. at 47, 87 S.Ct. 1428.
[31] State v. Schaaf, 109 Wash.2d 1, 7-8, 10, 743 P.2d 240 (1987) (recognizing that "The policies of the JJA are twofold: to establish a system of having primary responsibility for, being accountable for, and responding to the needs of youthful offenders; and to hold juveniles accountable for their offenses."). Schaaf, 109 Wash.2d at 10, 743 P.2d 240.
[32] RCW 13.40.010(2)(a)-(d).
[33] RCW 9.94A.030(11), (13); State v. Smathers, 109 Wash.App. 546, 549, 36 P.3d 1078 (2001), rev. denied, 146 Wash.2d 1017, 51 P.3d 87(2002).
[34] RCW 13.40.280.
[35] Former RCW 13.50.050(11)(a), (17) (1992).
[36] Former RCW 13.50.050(18)(1992).
[37] State v. J.H., 96 Wash.App. 167, 175-76, 978 P.2d 1121 (1999).
[38] Mitchell, 526 U.S. at 329, 119 S.Ct. 1307,
[39] 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).
[40] 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).
[41] Mitchell, 526 U.S. at 326, 119 S.Ct. 1307. (quoting Estelle, 451 U.S. at 462, 101 S.Ct. 1866,)
[42] See generally In re J.S.S., 20 S.W.3d 837 (Tex.App.2000) (holding that juveniles retain privilege against self-incrimination during dispositional phase of delinquency proceedings).
[43] State v. Decker, 68 Wash.App. 246, 252-53, 842 P.2d 500 (1992).
[44] 68 Wash.App. 246, 842 P.2d 500 (1992).
[45] Decker, 68 Wash.App. at 247, 842 P.2d 500.
[46] In re Dependency of Q.L.M., 105 Wash.App. 532, 543, 20 P.3d 465 (2001).
[47] 99 Wash.App. 701, 995 P.2d 98 (2000).
[48] T.C., 99 Wash.App. at 703, 995 P.2d 98.
[49] T.C., 99 Wash.App. at 707-08, 995 P.2d 98.
[50] T.C., 99 Wash.App. at 708-09, 995 P.2d 98.
[51] 114 Wash.App. 280, 57 P.3d 284 (2002).
[52] Bankes, 114 Wash.App. at 283, 57 P.3d 284.
[53] RCW 9.94A.670.
[54] Bankes, 114 Wash.App. at 283, 57 P.3d 284.
[55] Bankes, 114 Wash.App. at 283, 57 P.3d 284.
[56] Bankes, 114 Wash.App. at 289, 57 P.3d 284.
[57] Bankes, 114 Wash.App. at 289, 57 P.3d 284.
[58] Pens v. Bail, 902 F.2d 1464, 1466 (9th Cir.1990).