113 P.3d 19 (2005)
STATE of Washington, Respondent,
v.
TAI N., Date of Birth: 09/21/86, Appellant.
No. 54595-7-I.
Court of Appeals of Washington, Division 1.
May 31, 2005.
*21 Gregory Charles Link, Attorney at Law, Seattle, WA, for Appellant.
Thomas Lawrence Verge, Whatcom County Prosecutor's Office, Bellingham, WA, for Respondent.

PUBLISHED IN PART
BECKER, J.
¶ 1 Appellant Tai N., arrested near the Canadian border while carrying 108 pounds of marijuana in his car, was found guilty of possession with intent to deliver. The primary issue is whether recent decisions by the United States Supreme Court imply a right to jury trial for juvenile offenses. We conclude they do not. Nor do they require alteration in the burden of proof governing manifest injustice dispositions. Washington's juvenile justice code already requires the factual predicate for a manifest injustice disposition to be proved by clear and convincing evidence, a standard that in juvenile sentencing is equivalent to beyond a reasonable doubt.
¶ 2 The juvenile court in this case imposed a manifest injustice disposition based on the large amount of marijuana and also to discourage drug dealers from hiring juveniles as "mules." Because the stated reasons do not clearly and convincingly prove that the standard range sentence for this juvenile offender presents a serious and clear danger to society, we reverse the manifest injustice disposition.

FACTS
¶ 3 Henry Qualey, a federal border patrol agent, saw 17-year-old Tai N. park a car just south of the Canadian border in Blaine very late on December 24, 2003. When Tai drove off, Agent Qualey followed. He stopped Tai's car a short time later on Interstate 5. Upon searching the car, officers discovered three large hockey bags containing 76 vacuum sealed pouches of marijuana, a total of 108 pounds.
¶ 4 The State charged Tai in juvenile court with one count of possession of marijuana with intent to deliver. A court commissioner denied Tai's motion to suppress the marijuana. Based on stipulated evidence, the commissioner then found Tai guilty as charged.
¶ 5 The standard range sentence for Tai, who had no prior criminal history, was 0-30 days. The commissioner found that the offense was a major violation of the Uniform Controlled Substances Act because it involved a quantity substantially larger than for personal use. The commissioner also found that the standard range disposition would pose a danger to society because it was too short to discourage drug dealers from hiring juveniles as "mules" to carry illegal drugs. Based on these findings, the commissioner imposed a manifest injustice disposition of 20-24 weeks. The superior court adopted the commissioner's findings and reasons and denied Tai's motions to revise.

TRIAL BY JURY
¶ 6 Tai first contends that under the Sixth Amendment and the Washington Constitution, all juveniles charged with an offense are entitled to trial by jury. Courts have repeatedly rejected this contention in a long line of cases, but Tai argues that such cases have been undermined by Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
¶ 7 Blakely, Apprendi and Crawford do not discuss the subject of jury trials for juveniles. But in each of these cases, the Supreme Court examined in great detail the historical foundation of the constitutional *22 provision at issue in order to determine its meaning. Tai contends a similar analysis establishes that the Sixth Amendment does not distinguish between adults and juveniles for purposes of the right to a jury trial.
¶ 8 Juvenile adjudicatory proceedings have never been equated with a "criminal prosecution" for purposes of the Sixth Amendment. McKeiver v. Pennsylvania, 403 U.S. 528, 541, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). In McKeiver, a plurality of the Supreme Court considered and rejected an argument that the Due Process Clause requires jury trials for juveniles. As the Supreme Court later observed,
the Constitution does not mandate elimination of all differences in the treatment of juveniles.... We have tried, therefore, to strike a balanceto respect the "informality" and "flexibility" that characterize juvenile proceedings, ... and yet to ensure that such proceedings comport with the "fundamental fairness" demanded by the Due Process Clause.
Schall v. Martin, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984).
¶ 9 Washington courts have also consistently held that juvenile offenders do not have a right to jury trials under the Washington Constitution. See, e.g., State v. Schaaf, 109 Wash.2d 1, 743 P.2d 240 (1987); see also Monroe v. Soliz, 132 Wash.2d 414, 939 P.2d 205 (1997); State v. Lawley, 91 Wash.2d 654, 591 P.2d 772 (1979). This court recently reaffirmed that holding in State v. J.H., 96 Wash.App. 167, 978 P.2d 1121 (1999). Notwithstanding the adoption in 1997 of amendments to the juvenile justice code that tended to make it more punitive, we recognized the "unique rehabilitative nature of juvenile proceedings" as a continuing rationale for having judges, not juries, decide cases involving juvenile offenders. We concluded that "the juvenile justice provisions as amended still retain significant differences from the adult criminal justice system and still afford juveniles special protections not offered to adults". State v. J.H., 96 Wash. App. at 186-87, 978 P.2d 1121.
¶ 10 Our recent decision in State v. Diaz-Cardona, 123 Wash.App. 477, 98 P.3d 136 (2004), should not be interpreted as an indication that we are ready to reassess that issue. The question there was whether a juvenile sex offender has a Fifth Amendment right to refuse to participate in an evaluation ordered by the court for the purpose of selecting an appropriate disposition. The State argued that the difference between the rehabilitative goals of the juvenile system, as compared to the punitive goals of the adult system, would justify holding that a juvenile's right against self-incrimination does not extend to dispositional proceedings. We said that "in recent years, this argument has lost traction" because it is now well-recognized that juvenile courts function to punish as well to rehabilitate. Diaz-Cardona, 123 Wash.App. at 485, 98 P.3d 136.
¶ 11 In using the phrase "recent years," we were not referring to the five years that had passed since we decided J.H. We were referring to the original purposes of our juvenile code, as stated in the 1977 act that created it, as well as to the punishment-oriented amendments adopted in 1997. Having considered these same punitive aspects of juvenile justice in State v. J.H., we nonetheless concluded that "even after the 1997 amendments to the juvenile justice provisions, the state constitution still does not guarantee to juveniles the right to trial by jury." J.H., 96 Wash. App. at 185, 978 P.2d 1121.
¶ 12 In short, recent decisions do not compel a change to well-established precedent holding that non-jury trials of juvenile offenders are constitutionally sound.

BURDEN OF PROOF
¶ 13 Tai next contends that even if Apprendi and Blakely do not require jury trials for juvenile offenders, they do compel a change to the burden of proof used by a judge when sentencing a juvenile to a term beyond the standard range. Apprendi and Blakely involved the application to certain adult criminal sentencing procedures of the Sixth Amendment jury trial right and the Fourteenth Amendment due process guarantee of proof beyond a reasonable doubt. In this context, the United States Constitution requires that any fact that increases the penalty for a crime beyond that authorized by *23 the verdict alone, other than the fact of a prior conviction, be submitted to a jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.
¶ 14 In Blakely, the court held that the exceptional sentence provisions of Washington's adult sentencing statute violated these principles by allowing a judge (not a jury) to findby a mere preponderance of the evidenceaggravating factors that would justify a sentence above the standard range. The Blakely court acknowledged, however, that its holding rested heavily on the need to give intelligible content to the right of jury trial:
That right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.... Apprendi carries out this design by ensuring that the judge's authority to sentence derives wholly from the jury's verdict. Without that restriction, the jury would not exercise the control that the Framers intended.
Blakely, 124 S.Ct. at 2538-39. The role of the jury as a "circuitbreaker" in this context was crucial to the Court's decision. See Blakely, 124 S.Ct. at 2539.
¶ 15 Without a right of jury trial in juvenile cases, it is conceptually awkward to try to extract the due process component from Apprendi and Blakely and graft it onto non-jury juvenile dispositions. And it is unnecessary to do so because, as the State recognizes, the juvenile code already provides that a disposition harsher than the standard range must be supported by proof beyond a reasonable doubt.
¶ 16 Before entering a dispositional order, the juvenile court is directed to consider, among other things, whether aggravating factors exist. RCW 13.40.150(3)(i). The juvenile court may impose a disposition outside the standard range if it concludes, and enters reasons for its conclusion, that a standard range disposition would "effectuate a manifest injustice". RCW 13.40.160(2). A standard range disposition is manifestly unjust if it "would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter". RCW 13.40.020(17). "The court's finding of manifest injustice shall be supported by clear and convincing evidence." RCW 13.40.160(2).
¶ 17 The "clear and convincing" standard as applied to a manifest injustice disposition is a demanding standard that has long been equated with "beyond a reasonable doubt". See State v. Rhodes, 92 Wash.2d 755, 760, 600 P.2d 1264 (1979), overruled on other grounds in State v. Baldwin, 150 Wash.2d 448, 78 P.3d 1005 (2003). Consequently, in order to impose a disposition above the standard range, the juvenile court must find beyond a reasonable doubt that "the defendant and the standard range for the offense presents a clear danger to society." State v. Murphy, 35 Wash.App. 658, 669, 669 P.2d 891 (1983). Our cases have consistently recognized this stringent standard. See State v. Gutierrez, 37 Wash.App. 910, 684 P.2d 87 (1984); State v. J.S., 70 Wash.App. 659, 855 P.2d 280 (1993); State v. Duncan, 90 Wash.App. 808, 960 P.2d 941 (1998); State v. T.E.C., 122 Wash.App. 9, 92 P.3d 263 (2004). Indeed, defense counsel repeatedly referred to this standard in her arguments below.[1]
¶ 18 The adult sentencing statute invalidated by Blakely explicitly allowed trial courts to use a preponderance of the evidence standard in making the findings necessary to support a sentence outside the standard range. See former RCW 9.94A.530(2)[2]; see also State v. Hughes, 154 Wash.2d 118, 110 P.3d 192, 200, n. 3 (2005). By contrast, the only burden of proof referred to by our juvenile code in connection with factual determinations that support a manifest injustice disposition is the "clear and convincing" *24 standard. As construed in Rhodes, that means beyond a reasonable doubt.
¶ 19 Our juvenile code guarantees that a judge may not increase the penalty for a juvenile beyond what is authorized by the legislatively determined standard ranges, except upon finding proof beyond a reasonable doubt that the standard range sentence for the defendant in question would present a serious and clear danger to society. As the Juvenile Justice Act already provides this guarantee, we decline to decide whether Apprendi and Blakely require the same standard as a matter of constitutional due process.

REASONS FOR MANIFEST INJUSTICE
¶ 20 The commissioner found two reasons why the standard range disposition of 30 days or less would be manifestly unjust. First, Tai's offense involved the attempted transfer of marijuana in substantially larger quantities than for personal use. Second, the imposition of a standard range disposition posed a danger to the community because it would encourage drug dealers to hire teenagers.
¶ 21 With one exception not pertinent here, the superior court adopted the commissioner's findings and reasons and denied the motion to revise:
And I think beyond a reasonable doubt that a sentence within the standard range, considering the amount in question, would likely result in a serious and clear danger to society in the future not because of the actions of this particular juvenilewell, I will take that back. Both with regard to this juvenile as well as with others who would more likely be solicited to be the mules in the transportation of large amounts since the consequences, were the court not allowed to impose a sentence outside the range for large amounts of marijuana, as in this case, likely others would be solicited in the future and it would be more likely that other juveniles would be involved and introduced to crime which is a clear and serious danger to society.[3]
Tai contends the court's reasons are both factually and legally deficient and therefore cannot support a manifest injustice determination.
¶ 22 In reviewing a manifest injustice determination, we engage in a three-part test: "(1) Are the reasons given by the trial court supported by substantial evidence; (2) do those reasons support the determination of a manifest injustice disposition beyond a reasonable doubt; and (3) is the disposition either clearly too excessive or too lenient?" State v. Duncan, 90 Wash.App. 808, 812, 960 P.2d 941 (1998); RCW 13.40.230. The trial court's reasons for imposing a manifest injustice sentence "must be clear in the record and must convincingly support the conclusion." State v. Duncan, 90 Wash.App. at 812-13, 960 P.2d 941.
¶ 23 Tai first contends that there was no evidence to establish that the amount of marijuana in this case108 poundswas substantially more than for personal use. He further maintains that because the court relied on the quantity of marijuana to support the intent to deliver, this factor necessarily inhered in the standard range and therefore cannot be a basis to impose a manifest injustice disposition. We need not address the sufficiency of the evidence to support a finding that the quantity was more than for personal use because we conclude that this factor does not, in any event, clearly and convincingly support a manifest injustice determination under the circumstances of this case.
¶ 24 Under the Sentencing Reform Act, the presence of drug quantities larger than for personal use is a statutory aggravating factor and "constitutes an atypical, egregious crime warranting an exceptional sentence." State v. Hrycenko, 85 Wash.App. 543, 548, 933 P.2d 435 (1997) (four pounds of marijuana divided into nine bundles was a quantity larger than for personal use). Relying on cases affirming adult exceptional sentences, the State correctly points out that this factor would have subjected Tai to an exceptional sentence under the SRA had he been an adult. But because of the differences *25 between an adult exceptional sentence and a juvenile manifest injustice disposition, such cases are not controlling here.
¶ 25 A manifest injustice disposition must rest on a finding that a standard range disposition "for this offense and this defendant" presents a danger to society. Rhodes, 92 Wash.2d at 760, 600 P.2d 1264 (emphasis added). This determination reflects not only the need to hold juveniles responsible for their offenses, but also the continuing rehabilitative goals of the juvenile justice system and the policy of responding to the individual needs of offenders. See State v. J.N., 64 Wash.App. 112, 116-17, 823 P.2d 1128 (1992). The policy of responding to the needs of offenders is the "critical distinction" between the adult and juvenile systems. State v. Rice, 98 Wash.2d 384, 392-93, 655 P.2d 1145 (1982). The juvenile court must necessarily focus on the offender's circumstances, and must consider numerous factors that may not be relevant to adult sentencing. State v. Crabtree, 116 Wash.App. 536, 546, 66 P.3d 695 (2003).
¶ 26 By contrast, an exceptional sentence under the Sentencing Reform Act must be based on factors related to the crime and cannot, as a matter of law, rest on factors that are personal in nature or on the defendant's need for rehabilitation. State v. Law, 154 Wash.2d 85, 110 P.3d 717 (2005); State v. Bridges, 104 Wash.App. 98, 102, 15 P.3d 1047 (2001) (the defendant's need for rehabilitation is not a valid reason for an exceptional sentence as a matter of law). For these reasons, a factor that will justify an exceptional sentence for an adult offender will not necessarily justify departing from the standard range for a juvenile offender.
¶ 27 Here, the juvenile court did not identify any pertinent aspects of Tai's circumstances, such as a risk of reoffense, a need for treatment, or a lack of supervision, that might have shown that imposing the standard range disposition on him would endanger society. Without such reasons being given, the amount of marijuana that Tai was carrying does not clearly and convincingly support a manifest injustice disposition.
¶ 28 Similarly, the court's desire to "send a message" that would deter adult drug dealers from using juveniles as "mules" is inadequate to justify going above the standard range. First, no evidence in the record supports the premise of a deterrent effect upon adult drug dealers. Second, the court's reasoning had nothing to do with Tai's case in particular. The court's desire to "send a message" rested solely on a dissatisfaction with the standard range. Generally, a standard range disposition will be adequate to achieve the goals of the Juvenile Justice Act, including the goal of rehabilitation. State v. K.E., 97 Wash.App. 273, 282, 982 P.2d 1212 (1999). Dissatisfaction with the standard range is not a valid basis for a manifest injustice disposition. State v. S.S., 67 Wash. App. 800, 814, 840 P.2d 891 (1992).
¶ 29 We conclude the reasons given by the court did not clearly and convincingly establish that society would be endangered by imposing a standard range sentence on this defendant. The manifest injustice disposition is reversed and the case remanded for entry of a standard range disposition.
¶ 30 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
WE CONCUR: GROSSE and COX, JJ.
NOTES
[1] See Report of Proceedings (June 14, 2004): Report of Proceedings (July 12, 2004), at 6.
[2] The Legislature's amendment of this statute in response to Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) became effective April 15, 2005. Laws of 2005, ch. 68, § 2.
[3] Report of Proceedings (July 12, 2004), at 21-22.